**John T. PERCLE, a/k/a Chef Johnny "Jambalaya" Percle Trade Name "Soul in Yo Bowl"**

v.

**SFGL FOODS, INC., Overhill Farms, Inc. and William "Smokey" Robinson**

No. CIV.A. 04–367–B–M1.

United States District Court, M.D. Louisiana.

Dec. 17, 2004.

**RULING**

POLOZOLA, Chief Judge.

This matter is before the Court on defendant's motion to dismiss for lack of personal jurisdiction.[1] The motion is opposed.[2] For the reasons which follow, defendant's motion to dismiss[3] is GRANTED.

### I. Factual Background

Plaintiff John T. Percle, also known as Chef Johnny "Jambalaya" Percle (Trade Name "Soul in Yo Bowl"), maintains a business of cooking, selling and promoting culinary recipes and food related to picantes, gumbos, roux, stews, red beans and rice, and jambalaya in the United States. The plaintiff has also been engaged in radio broadcasting and music entertainment since 1997. Percle created and performed a compact disc in December, 1997 entitled "Soul in Yo Bowl Recipes for the Good Life" with his Cajun Lightfood Band.[4]

On November 3, 1997, Percle filed an application which was recorded in the Secretary of State's Office in Baton Rouge, registering the trade name "Soul in Yo Bowl." The registration is valid for ten years from the date recorded.[5]

Percle argues that he has continuously used "Soul in Yo Bowl" in his business of cooking, selling, and promoting recipes and his salad/marinade product through his weekly radio show on KTIB, 640 AM, Thibodeaux, Louisiana, as well as through his duties as Head Chef for Nottoway Plantation in White Castle, Louisiana.[6] Plaintiff

Leo Phillip Canova, Jr., Louis W. Delahaye, Thomas C. Delahaye, Canova & Delahaye, Plaquemine, LA, for Plaintiff.

Robert A. Kutcher, Nicole S. Tygier, Chopin, Wagar, Cole, Richard, Reboul & Kutcher, LLP, Metairie, LA, for Defendant.

1. Rec. Doc. No. 9.

2. Rec. Doc. No. 20.

3. Rec. Doc. No. 9.

4. See Plaintiff's Summary of Argument, p. 1, Rec. Doc. No. 33.

5. See Plaintiff's exhibit 2, Rec. Doc. No. 1.

6. See Plaintiff's Summary of Argument, p. 1, Rec. Doc. No. 33.

claims he has used the "Soul in Yo Bowl" trade name from the time the application was filed and recorded in the Secretary of State's office until the present, and has not abandoned this trade name.

Plaintiff alleges that on or about January 14, 2004, the defendants SFGL Foods, Inc., et al. (hereinafter "SFGL") began advertising and exhibiting the "Smokey Robinson's The Soul is in the Bowl" food product line, consisting of gumbo, red beans & rice, and jambalaya. The defendants had previously applied for the trade name "Smokey Robinson's The Soul is in the Bowl" with the United States Patent and Trademark Office in November of 2003 to market gumbo, red beans & rice and jambalaya, among other foods.[7] Plaintiff contends that the defendants have used the aforementioned trade name with the intent to appropriate the trade name to their own use and benefit, and such an appropriation will likely cause confusion to consumers.[8] On June 4, 2004, Percle filed this action against defendants SFGL, Overhill Farms, Inc., and William "Smokey" Robinson. Overhill Farms has not made an appearance in this action.

Percle argues that defendants' advertising and/or sale of food under the trade name "The Soul is in the Bowl," and defendants' food products, which are closely related to his own products and area of business, are an infringement upon the plaintiff's trade name rights. The plaintiff claims that SFGL's operation of the website, www.smokeyrobinsonfoods.com, provides access to products that allegedly infringe upon the plaintiff's registered trade name in Louisiana. Thus, the defendants SFGL and William "Smokey" Robinson should be subject to personal jurisdiction in Louisiana. The website advertises on the world wide web likening the defendants' red beans & rice to be "as delicious as any Louisiana dish."[9] The internet advertisement continues that when one tastes the red beans & rice, "you may never miss New Orleans again."[10] Plaintiff further contends that, because of the nature of SFGL's and Robinson's advertisements, which continually relate to Louisiana gumbo and New Orleans red beans and rice, there is a "continuous and systematic" contact with Louisiana to allow the Court to find that it has personal jurisdiction over these defendants.[11]

Percle further states that SFGL's and Robinson's advertising platform for its "The Soul is in the Bowl" food products relates very closely to Louisiana and New Orleans food, gumbo, and red beans and rice. Furthermore, SFGL has retained agreements with Albertson's and Safeway, which are retailers who do business in the state of Louisiana, to distribute its products. Percle claims that the defendants' statements on the website that the "roll out" schedule for products in Louisiana on July 4, 2004 constitutes a "continuous and systematic" contact with Louisiana.[12] However, it is clear from the record that these products were not available for sale at the time this suit was filed, and remain unavailable to purchasers in Louisiana.[13]

Plaintiff argues that the defendant's website is not purely informational because it provides interaction with visitors to the site by allowing them to enter information into a host computer. Visitors can enroll in promotions as well as determine when the product will be available in their

7. See Rec. Doc. No. 20.

8. See Plaintiff's Original Complaint, p. 3, Rec. Doc. No. 1, and Rec. Doc. No. 20.

9. See Rec. Doc. No. 20.

10. Id.

11. See Rec. Doc. No. 20.

12. Rec. Doc. No. 20.

13. Rec. Doc. No. 32.

state. The defendants' website also accepts personal "testimonials" from visitors to the site.[14] Thus plaintiff argues that SFGL and Robinson have made an effort to serve the Louisiana market as represented on their website.

Finally, Plaintiff also argues that the defendant William "Smokey" Robinson knew or should have known that the plaintiff owned the trade name "Soul in Yo Bowl" in the state of Louisiana.

As noted earlier, SFGL has filed a motion seeking dismissal on the ground that the Court lacks personal jurisdiction over these defendants. Defendant SFGL contends that it is a California corporation that has never had, nor does it currently have its principal place of business in Louisiana. SFGL also states that (1) it has never had an office in Louisiana; (2) has never done business in Louisiana; (3) is not qualified to do business in Louisiana; (4) does not maintain ongoing personal or professional connections with the state of Louisiana; (5) does not own property in Louisiana; (6) does not have employees in Louisiana; (7) does not solicit business in Louisiana; and, (7) does not have a registered agent for service of process in Louisiana.[15]

Defendant also argues that its food products, including the aforementioned gumbo, are not available for purchase in Louisiana.[16] According to SFGL, the website *www.smokeyrobinsonfoods.com* does not provide a forum to allow customers to purchase its products. Specifically, the defendant states that its website is "mostly informational." The only level of interactivity available to a visitor on the website

is a sign-up form for the SFGL mailing list, which then allows the individual to be entered into a drawing for a chance to win several different prizes. Visitors to the website can also complete an information form for SFGL to contact them if the visitor is interested in carrying SFGL's gumbo. SFGL states that it has never received a response from a Louisiana resident.[17]

Finally, the defendant Robinson argues that he is merely a member of SFGL's Board of Directors and has allowed SFGL to use Robinson's name in connection with its food products. Robinson states that he has not used the name "The Soul is in the Bowl" for any personal purpose.[18]

Robinson also contends that he (1) has not directed any activities towards the state of Louisiana; (2) is a resident of, and domiciled in the state of California; (3) does not have an office in Louisiana; (4) has never lived in Louisiana; and, (5) does not have any continuous personal or professional connection with the state of Louisiana. Robinson's visits to this state have been limited to his performances, and those performances were in no way related to SFGL's products.[19]

## II. *Law and Analysis*

### A. **Motion to Dismiss**

■ A motion to dismiss under Rule 12(b)(2) governs challenges to a court's jurisdiction over a person. "When a nonresident defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating the district court's jurisdiction over the defendant."[20] Furthermore, where a court de-

---

14. Rec. Doc. No. 20.

15. Rec. Doc. No. 32.

16. *Id.*

17. Rec. Doc. No. 32.

18. *Id.*

19. Rec. Doc. No. 32.

20. *Doddy v. Oxy USA, Inc.*, 101 F.3d 448 (5th Cir.1996), *citing Wilson v. Belin*, 20 F.3d 644, 649 (5th Cir.), *cert. denied*, 513 U.S. 930, 115 S.Ct. 322, 130 L.Ed.2d 282 (1994).

cides a "Rule 12(b)(2) motion without an evidentiary hearing, the plaintiff may satisfy his burden by presenting a prima facie case for jurisdiction." [21]

## B. Personal Jurisdiction over a Foreign Defendant

■ Under the Federal Rules of Civil Procedure, a federal court may exercise personal jurisdiction over a nonresident defendant only if permitted by state law.[22] The 1987 amendment to Louisiana's long-arm statute extended jurisdiction over a foreign defendant to the limits allowed by due process. Thus, when constitutional requirements of due process are satisfied, "there is no longer a need to inquire into whether the defendant's conduct falls within the reach of the long-arm statute." [23]

■ The Due Process Clause will permit a court's exercise of personal jurisdiction over a foreign defendant when: "(1) that defendant has purposefully availed himself of the benefits and protections of the forum state by establishing 'minimum contacts' with the forum state; and (2) the exercise of jurisdiction over that defendant does not offend 'traditional notions of fair play and substantial justice.' " [24]

Establishing what is required to satisfy "minimum contacts," the United States Supreme Court held that, "[i]n judging minimum contacts, a court properly focuses on 'the relationship among the defendant, the forum, and the litigation.' [25] The plaintiff's lack of 'contacts' will not defeat otherwise proper jurisdiction, but they may be so manifold as to permit jurisdiction when it would not exist in their absence." [26] To establish "minimum contacts," the United States Supreme Court has also held that, " 'foreseeability that is critical to the due process analysis....is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." ' [27]

■ These required "minimum contacts" may be established by contacts sufficient to assert specific jurisdiction or general jurisdiction.[28] Specific jurisdiction over a nonresident foreign corporation "is appropriate when that corporation has purposefully directed its activities at the forum state and the 'litigation results from alleged injuries that "arise out of or relate to" those activities.' " [29] General jurisdiction is available when "the nonresident defendant's contacts with the forum state, although not related to the plaintiff's cause

---

21. *Id.*, citing *Felch v. Transportes Lar–Mex SA De CV*, 92 F.3d 320, 326 (5th Cir.1996).

22. *See Alpine View Company Limited v. Atlas Copco AB*, 205 F.3d 208, 214 (5th Cir.2000).

23. *Petroleum Helicopters, Inc. v. Avco Corporation*, 834 F.2d 510, 514 (5th Cir.1987).

24. *Alpine View*, 205 F.3d at 215, *citing Mink v. AAAA Dev. LLC*, 190 F.3d 333, 336 (5th Cir.1999) (*quoting Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir.1999)) (in turn *quoting International Shoe Co. v. State of Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)).

25. *Calder v. Jones*, 465 U.S. 783, 788, 104 S.Ct. 1482, 1484, 79 L.Ed.2d 804 (1984), *citing Shaffer v. Heitner*, 433 U.S. 186, 204, 97 S.Ct. 2569, 2579, 53 L.Ed.2d 683 (1977). *See*

also *Rush v. Savchuk*, 444 U.S. 320, 332, 100 S.Ct. 571, 579, 62 L.Ed.2d 516 (1980).

26. *Id.* (Citations omitted).

27. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985) (*quoting World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980)).

28. *Id.*

29. *Alpine View*, 205 F.3d at 215, *quoting Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (*quoting Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984)).

of action, are 'continuous and systematic.' " [30]  Thus, general jurisdiction "may be assessed by evaluating contacts of the defendant with the forum over a reasonable number of years, up to the date the suit was filed." [31]

■ When, as in this case, a district court does not conduct an evidentiary hearing, "the party seeking to assert jurisdiction must present sufficient facts as to make out only a prima facie case supporting jurisdiction." [32]  Furthermore, a court "must accept as true that party's uncontroverted allegations, and resolve in its favor all conflicts between the facts contained in the parties' affidavits and other documentation." [33]

### C. The Court does not have general personal jurisdiction over SFGL or William "Smokey" Robinson because the defendants lack continuous and systematic contact with the state of Louisiana.

■ As previously discussed, general jurisdiction exists where a "defendant's contacts with the forum state are substantial and continuous and systematic but unrelated to the instant cause of action." [34]  A defendant residing in the forum, or having a continuous and ongoing relationship with the forum, normally creates continuous contact that creates general jurisdiction over the defendant. Clearly, there is no general jurisdiction over the defendants under the facts of this case. It is clear from the record that SFGL does not reside in the state of Louisiana; is not registered to do business in Louisiana; does not in fact do business in Louisiana; its products are not sold in Louisiana; and, it does not receive requests from Louisiana residents to have its product sold in stores located in Louisiana.

■ Furthermore, defendant William "Smokey" Robinson does not have an ongoing personal or professional relationship with the state of Louisiana. His visits to Louisiana have been limited to his musical performances, which the Court finds are not sufficient to support general personal jurisdiction. Thus, the Court finds that it does not have general personal jurisdiction over SFGL, Inc. or William "Smokey" Robinson under the facts of this case.

### D. The Court does not have specific personal jurisdiction over defendants because their activities are not purposefully directed at Louisiana.

Specific jurisdiction exists when a foreign defendant "has 'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities." [35]  Plaintiff argues that SFGL's website is an advertisement that is continuously available to Louisiana residents, harms

**30.** *Id.*, *citing Helicopteros*, 466 U.S. at 415–16, 104 S.Ct. 1868.

**31.** *Id.*, at 217, *citing Access Telecom, Inc. v. MCI Telecommunications Corp.*, 197 F.3d 694, 717 (5th Cir.1999).

**32.** *Id.*, at 215 (*See Felch v. Transportes Lar– Mex SA De CV*, 92 F.3d 320, 326 (5th Cir. 1996)).

**33.** *Id.*, (*See Guidry v. United States Tobacco Co.*, 188 F.3d 619, 625–26 (5th Cir.1999); *Latshaw*, 167 F.3d at 212; *Ruston Gas Tur-*

*bines, Inc. v. Donaldson Co.*, 9 F.3d 415, 418 (5th Cir.1993) ("[w]hen alleged jurisdictional facts are disputed, we must resolve all conflicts in favor of the party seeking to invoke the court's jurisdiction"); *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir.1990)).

**34.** *Central Freight Lines, supra*, citing *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984)

**35.** *Religious Technology Center v. Dell Liebreich*, 339 F.3d 369 (5th Cir.2003).

his intellectual property in Louisiana, and thus subjects SFGL to personal jurisdiction in the state of Louisiana.

The Fifth Circuit has directly addressed this issue in its paramount decision rendered in *Mink v. AAAA Development, LLC.*[36] Mink was a Texas resident who developed a computer program designed to track information on sales made and opportunities missed on sales not made.[37] He obtained a patent, and was approached a few months later at a trade show by Robert Start, who proposed the idea of marketing his tracking program. Mink initially declined, but later spoke to Stark again to discuss the possibility of marketing the program. Within this short time, Stark shared Mink's information with several people, allegedly conspiring to copy Mink's program. Mink filed suit in the United States District Court for the Southern District of Texas, and the defendants, residents of Vermont, filed a motion to dismiss for lack of personal jurisdiction.[38]

In deciding this issue, the Fifth Circuit conducted an examination of personal jurisdiction, similar to the analysis set forth earlier in this opinion. The court stated that the plaintiff did not meet his burden of establishing that the court had personal jurisdiction over the defendant Middlebrook.[39] However, the plaintiff also argued that the other defendant's website was available to Texas residents on the Internet; therefore, plaintiff contended that the defendant should be subject to personal jurisdiction in Texas. Acknowledging that this was a case of first impression at that time, the Fifth Circuit relied upon the seminal case of *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*[40] in setting forth a standard for courts to follow in determining whether there is personal jurisdiction where use of the Internet is involved. Specifically, the Fifth Circuit held:

> The Zippo decision categorized Internet use into a spectrum of three areas. At the one end of the spectrum, there are situations where a defendant clearly does business over the Internet by entering into contracts with residents of other states which 'involve the knowing and repeated transmission of computer files over the Internet.'[41] In this situation, personal jurisdiction is proper.[42] At the other end of the spectrum, there are situations where a defendant merely establishes a passive website that does nothing more than advertise on the Internet. With passive websites, personal jurisdiction is not appropriate.[43] In the middle of the spectrum, there are situations where a defendant has a website that allows a user to exchange information with a host computer. In this middle ground, "the exercise of jurisdiction is determined by the level of interactivity and commercial nature of the exchange of information that occurs on the Website."[44]

The Fifth Circuit found the *Zippo*[45] standard persuasive and adopted it for the Fifth Circuit.

---

**36.** 190 F.3d 333 (5th Cir.1999).

**37.** *Id.*

**38.** *Id.* at 335.

**39.** *Id.*

**40.** 952 F.Supp. 1119 (W.D.Pa.1997)

**41.** *Mink,* at 336, citing *Zippo, supra* at 1124.

**42.** *Mink,* at 336, citing *Zippo, supra,* citing *CompuServe, Inc. v. Patterson,* 89 F.3d 1257 (6th Cir.1996).

**43.** *Mink,* at 336, citing *Zippo, supra,* citing *Bensusan Restaurant Corp. v. King,* 937 F.Supp. 295 (S.D.N.Y.1996), *aff'd,* 126 F.3d 25 (2d. Cir.1997).

**44.** *Mink,* at 336, citing *Zippo, supra,* citing *Maritz, Inc. v. Cybergold, Inc.,* 947 F.Supp. 1328 (E.D.Mo.1996).

**45.** *Supra.*

The Fifth Circuit again applied the *Zippo*[46] sliding scale approach in *Revell v. Lidov*.[47] In *Revell*, the defendant Lidov wrote an article regarding the terrorist bombing of Pan Am Flight 103, which exploded over Scotland in 1988.[48] In that article, Lidov accused the government of misleading the public about the facts surrounding that situation, specifically singling out Oliver "Buck" Revell, then associate Deputy Director for the FBI. The article stated that Revell, in addition to contributing to the conspiracy surrounding the flight explosion, arranged for his son, who was previously booked on Pan Am 103, to take a different flight. Lidov posted the article on a website maintained by Columbia School of Journalism, where visitors to the website could post their own works and also read those of others.[49] Revell, a resident of Texas, filed suit against the Columbia University Board of Trustees and Lidov in the Northern District of Texas. Both defendants filed motions to dismiss for lack of personal jurisdiction. The district court granted the motions, and Revell appealed the court's dismissal to the Fifth Circuit. On his appeal, Lidov argued that he had never been to Texas, nor had he ever conducted business in Texas. Lidov also noted that he had never been a student nor faculty member of Columbia University.[50] The Fifth Circuit, again faced the question of personal jurisdiction based on an internet website, relied on its prior decision of *Zippo* to hold as follows:

This circuit has drawn upon the approach of *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.* in determining whether the operation of an internet site can support the minimum contacts necessary for the exercise of personal jurisdiction.[51] *Zippo* used a 'sliding scale' to measure an internet site's connections to a forum state.[52] A 'passive' website, one that merely allows the owner to post information on the internet, is at one end of the scale.[53] It will not be sufficient to establish personal jurisdiction.[54] At the other end are sites whose owners engage in repeated online contacts with forum residents over the internet, and in these cases personal jurisdiction may be proper.[55] In between are those sites with some interactive elements, through which a site allows for bilateral information exchange with its visitors.[56]

In *Revell*, the court described Columbia University's bulletin board website as interactive, which allowed a visitor to participate in an open forum hosted by the website. Although the facts of *Revell*[57] are distinguishable from the case at bar, the Fifth Circuit held that because "one cannot purposefully avail oneself of 'some forum someplace,'" the low-level of interactivity and insufficient contacts with Texas did not establish personal jurisdiction over the defendant. The court affirmed the dismissal for lack of personal jurisdiction as to both defendants".[58]

46. *Id., supra.*

47. 317 F.3d 467 (5th Cir.2002).

48. *Id.* at 469.

49. *Lidov, Id.* at 469.

50. *Id.*

51. *Lidov, supra,* at 470, citing *Mink,* 190 F.3d at 336.

52. *Lidov, supra,* at 470, citing *Zippo,* 952 F.Supp. at 1124.

53. *Lidov, Id.,* citing *Zippo, Id.*

54. *Id.*

55. *Id.*

56. *Id.*

57. *Id.*

58. *Id.* at 476.

Thus, this Court must apply the *Zippo* standard to the facts of this case. Percle argues that SFGL's website is interactive, which allows potential customers to register with the website, use the site to send comments on the product, register for prizes, receive information on its product, and seek information on how to sell SFGL's product.[59] Applying the *Zippo* standard to the facts of this case, the Court rejects the plaintiff's argument and finds the facts do not support a finding of personal jurisdiction over SFGL.

Specifically, the Court finds that SFGL's website more appropriately falls within the passive end of the spectrum. In fact, the website only allows a minimum of interactivity. It is clear that the website does not allow consumers to order or purchase products or services online, it does not reply to emails initiated by website visitors, and does not permit visitors to the website to communicate directly with defendants. The record also reveals that SFGL has not made an effort to intentionally conduct business in Louisiana. As stated previously herein, "[a] passive website that does little more than make information available to those who are interested is not grounds for the exercise of personal jurisdiction."[60] Thus, because of the lack of activities purposefully directed at Louisiana by SFGL, and the informational nature of its website, the Court finds that it does not have specific personal jurisdiction over defendant SFGL.

The Court is not persuaded that defendants' references to New Orleans, Louisiana, or cuisine that is directly related to Louisiana, is sufficient to establish specific personal jurisdiction. Plaintiff argues that SFGL and Robinson's food product, including gumbo, red beans and rice, and jambalaya, are foods geographically identified with Louisiana and the city of New Orleans.[61] However, mere "identification" with a particular forum, absent any activity directed at that forum has never been considered a sufficient basis for establishing personal jurisdiction in this Circuit.

Finally, the Court finds that it does not have specific personal jurisdiction over defendant William "Smokey" Robinson for the reasons set forth above and because of his lack of activities directed at Louisiana in relation to the matter which is the subject of this suit.

### III. Conclusion

Plaintiff has not met his burden of demonstrating that this Court has personal jurisdiction over defendants SFGL, Inc. or William "Smokey" Robinson.

Therefore, the Court finds that the defendants' Motion to Dismiss[62] should be GRANTED.

Rather than immediately dismiss this suit, the Court will give the plaintiff the option of having this case transferred to the Central District of California, or be dismissed. Plaintiff shall advise the Court on or before December 22, 2004 of its decision. Should the plaintiff fail to respond to the Court's order, an order of dismissal will automatically be issued by the Court.

IT IS SO ORDERED.

---

**59.** Plaintiff's Summary of Argument, p. 5, Rec. Doc. No. 33.

**60.** *Mink, supra,* citing *Bensusan Restaurant Corp. v. King,* 937 F.Supp. 295 (S.D.N.Y. 1996), *aff'd,* 126 F.3d 25 (2d Cir.1997)

**61.** Plaintiff's Summary of Argument, Rec. Doc. No. 33.

**62.** Rec. Doc. No. 9.