JOHN EDWARD SACRA, Individually and Personal Representative of the Estate of John Edward Sacra, Jr. *v.* HENRY C. SACRA et ux.

[No. 698, September Term, 1980.]

*Decided March 6, 1981.*

The cause was argued before MOORE, LISS and WEANT, JJ.

*Harry J. Trainor, Jr.,* with whom were *Greenan, Walker & Kupferberg* on the brief, for appellant.

*Paul V. McCormick,* with whom were *Mary E. McCormick* and *McInerney, Layne, McCormick, Sullivan & Rice* on the brief, for appellees.

WEANT, J., delivered the opinion of the Court.

This appeal is from the action of the Circuit Court for Montgomery County sustaining without leave to amend the appellees' demurrer to the appellant John Edward Sacra's two count declaration alleging a wrongful death action as well as a survival action.

The actions complained of arose out of an accident that occurred on or about 16 September 1979, at which time Henry C. Sacra was driving a camper truck, which was owned by him and his wife Hazel, the appellees herein, on Delaware Route 12 just north of the Maryland-Delaware State line. Tragically Mr. Sacra failed to stop the camper at a Delaware stop sign and consequently it was struck by another vehicle, which was traversing the intersecting Delaware highway. This impact caused the Sacra vehicle to be pushed across the Maryland State line where it struck a Maryland utility pole, overturned, and then exploded into flames. As a result, John Edward Sacra Jr., the appellant's decedent, died of thermal burns, as did the decedent's cousin, Norman C. Sacra Jr. Subsequently, John Edward Sacra, individually and as personal representative of the estate of John Edward Sacra Jr. filed suit against Henry C. Sacra and Hazel Sacra, seeking expenses and damages as a result of the appellees' negligence. As was noted above, the trial court disposed of the wrongful death and survival actions by granting the appellees' demurrer without leave to amend.

On appeal the following questions are presented by the appellant:

1. Did the lower court commit error in sustaining Defendants' Demurrer to Count I (Wrongful Death) on the ground that Delaware substantive law applies to this cause of action, because the statutory choice-of-law rule in wrongful death actions directs application of the substantive law of the jurisdiction where the wrongful act occurred, and Plaintiff's Amended Declaration clearly alleges that the wrongful act occurred in Maryland?

2. Did the lower court commit error in sustaining Defendants' Demurrer to Count II (Survival Action) on the ground that Delaware substantive law applies to this cause of action, because the common law *lex loci delicti* rule directs the courts, on tort questions, to apply the substantive law of the place of injury, and Plaintiff's Amended Declaration clearly alleges that the injury causing death occurred in Maryland?

3. Even if the lower court was correct in ruling that Delaware law controls the substantive issues of this case, did the lower court commit error in sustaining Defendants' Demurrer to Plaintiff's Amended Declaration, because a critical question of fact (whether Plaintiff's decedent was or was not a guest passenger within the meaning of the applicable Delaware statute?) remains in dispute?

4. Even if the lower court was correct in ruling that Delaware law controls the substantive issues of this case, did the lower court commit error in applying a Delaware statute of debatable constitutionality that is contrary to strong public policy of the state of Maryland?

## 1. and 2.

Both of these inquiries raise the issue whether the substantive law of Maryland or that of Delaware should be applied in the instant case. It is theorized by the appellant that because the place of injury, *i.e.,* death, was in Maryland, the choice-of-law rule and the lex loci delecti rules should be interpreted so as to result in the application of Maryland substantive law. On the other hand, the appellees maintain that the substantive law of the State of Delaware should govern because the controlling law should be that of the place where the force was set in motion or that of the place of the impact.[1]

Neither party has cited a case directly on point, nor have we been able to find one involving the facts as they exist here, *i.e.,* where the impact to a vehicle occurs in one state and it is forced across the state line by the impetus of said impact, causing the death in another state.

The appellant seems to suggest that there are two separate and distinct elements of the accident in question. He speaks of Delaware as being the place where the alleged wrongful act or omission took place and Maryland as being the place where the injury or death was inflicted. However, it is our opinion that there was a single, integrated accident, which occurred in Delaware and caused the death of the appellant's decedent. The fact that the state line intervened between the impact and death was merely a fortuitous situation. Although we are not told exactly how close to the state line the accident occurred, we gather that the Sacra vehicle traveled less than fifty-seven feet after the impact with the other vehicle and before the impact with the Maryland utility pole. Thus, there was no substantial lapse of time or

---

1. In the proceedings in the circuit court, the appellees filed a notice of intent to rely upon foreign law, specifically Del. Code tit. 21, § 6101 (a), the Delaware Automobile Guest Statute, which provides in part that "[n]o person transported by the owner or operator of a motor vehicle . . . as his guest without payment for such transportation shall have a cause of action for damages against such owner or operator for injury, death or loss, in case of accident, unless such accident was intentional on the part of such owner or operator or was caused by his wilful or wanton disregard of the rights of others."

distance between the original impact and the resultant death of the victim. Moreover, it was only because of the harm in Delaware that the appellant has any claim. While the death could have occurred without the impact with the telephone pole, *e.g.,* by spontaneous fire or crushing, no such damage could have transpired without the original collision. It is this happening that is the *fons et origo* of the unfortunate death of John Edward Sacra Jr., which in turn must be imputed to the locus of Delaware.

It follows then that the substantive law of Delaware should govern in this case. In the opinion of *White v. King,* 244 Md. 348, 352, 223 A.2d 763, 765 (1966) (citations omitted), Judge Oppenheimer, in speaking for the Court of Appeals, said: "This Court has consistently followed the rule that when an accident occurs in another state substantive rights of the parties, even though they are domiciled in Maryland, are to be determined by the law of the state in which the alleged tort took place." The *White* case involved the successful effort of a defendant to use the guest statute of the State of Michigan in a Maryland court.

We therefore conclude that the answers to questions 1 and 2 should be in the negative.

3.

While our answers to questions 1 and 2 make available to the appellees the guest statute of the State of Delaware, nowhere in the amended declaration do we find any pleaded facts that show that John Edward Sacra Jr. was a guest when he became involved in the accident in question. Because of this, we think that the trial court erred in sustaining defendants-appellees' demurrer to the plaintiff-appellant's amended declaration. For this reason we shall reverse the trial court and remand for a determination of whether or not the decedent was a guest passenger within the meaning of the applicable Delaware statute.

## 4.

This question urges upon us the proposition that the trial court erred in applying the Delaware statute because of its alleged debatable constitutionality and because it is contrary to the strong public policy of the State of Maryland. As to whether the statute in question is constitutional, it appears that it has been upheld by the Delaware Supreme Court in *Loper v. Street,* 412 A.2d 316 (Del. Supr. 1980), with the comment that any change should be made by the General Assembly. Moreover, in *White, supra,* the Maryland Court of Appeals had no difficulty approving the use in our courts of a similarly designed Michigan guest statute. Therefore, the public policy referred to by the appellant is not as strong as he suggests.

Accordingly, we find no merit in the suggested propositions of question 4.

> *Reversed and remanded for further proceedings in accordance with the opinion of this court.*
> *Costs to abide result.*