**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**July 22, 2003**

Charles R. Fulbruge III
Clerk

Revised July 25, 2003

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT
_____

No. 02-40783
_____


RELIGIOUS TECHNOLOGY CENTER,

                              Plaintiff - Appellee,

                    v.

DELL LIEBREICH, Individually and
as personal representative of
the Estate of Lisa McPherson,

                         Defendant - Appellant,

THOMAS J. DANDAR; KENNAN G. DANDAR,

                              Appellants,
                  -------------------
                  consolidated with
                     No. 02-40786
                  -------------------

RELIGIOUS TECHNOLOGY CENTER,

                         Plaintiff - Appellant,

                    v.

DELL LIEBREICH, as personal
representative of the Estate
of Lisa McPherson,

                         Defendant - Appellee,

                  -------------------
                  consolidated with
                     No. 02-40964
                  -------------------

RELIGIOUS TECHNOLOGY CENTER,

1

                              Plaintiff - Appellee,

                    v.

     DELL LIEBREICH, as personal
     representative of the Estate
     of Lisa McPherson,

                              Defendant - Appellant.

     _____
           Appeal from the United States District Court
                 for the Eastern District of Texas
     _____

Before KING, Chief Judge, DAVIS and BENAVIDES, Circuit Judges.

BENAVIDES, Circuit Judge:

     This consolidated appeal arises from a breach of contract

suit instigated by Plaintiff-Appellee-Cross-Appellant Religious

Technologies Center (RTC) against the estate of Lisa McPherson

(the Estate).[1]  We find the district court lacked personal

jurisdiction over the Estate, and we herein vacate the judgment

of the district court.[2]

                              I.

     A.    *The Florida Wrongful Death Action*

     In 1997, the Estate of Lisa McPherson filed a wrongful death

action in state court in Tampa, Florida against various

_____

     [1]RTC's motion to file a supplemental memorandum of law is
granted.

     [2]All three of the appeals at bar stem from rulings entered
by the district court in the course of adjudicating the breach of
contract claim, and consequently, the issue of personal
jurisdiction is dispositive of all the issues presented to the
Court in this appeal. Consequently, we confine our analysis to
the question of personal jurisdiction.

                              2

corporations and individuals affiliated with the Church of Scientology. Among those named in the complaint were the Church of Scientology, Flag Service Organization, Inc. (a corporation associated/affiliated with the Church of Scientology), and several individual Scientologists. Upon being served with the complaint, and ostensibly as a cost-saving measure, Defendant Flag Service Organization (Flag) proposed to the Estate that they enter into an agreement to limit the number of Scientology-related corporate entities and individuals that would be named in the suit. The Estate and Flag consequently entered into a contract in which the Estate agreed to forego adding certain enumerated corporate defendants, and Flag agreed to forego encumbering its assets.

In 1999, the Estate moved the Florida court to add David Miscavige (the "worldwide ecclesiastical leader of Scientology") to the list of named defendants in its wrongful death action. Miscavige is the Chairman of the Board of RTC, a Scientology corporation, and while RTC was listed among the parties which the Estate was contractually bound to exclude from its action, the Estate sought to add Miscavige under the theory that it was not contractually precluded from adding Miscavige in his personal capacity. The Florida court was presented with the defendant-limiting contract between the Estate and Flag, and entered an interlocutory ruling that the contract did not prohibit the Estate from adding Miscavige as a defendant in his

personal capacity.[3]

No appeal from the order in which the court permitted the Estate to add Miscavige in his personal capacity was attempted, nor was an appeal necessary in that on June 16, 2000, the Florida court granted Miscavige's motion to dismiss the complaint with respect to him due to insufficient service of process. Miscavige also sought attorneys' fees, and the Florida court denied Miscavige's motion with respect to fees. Miscavige appealed the fee issue to the Florida appellate court. The Florida appellate court affirmed the trial court's ruling on the issue of attorneys' fees.

B.  *The Breach of Contract Action*

While Miscavige's appeal of the attorneys' fee issue was still pending, RTC filed suit against the Estate for breach of the Estate-Flag defendant-limiting contract, and against Liebreich personally for tortiously interfering with the contract between the Estate and Flag. RTC filed in United States District Court in the Eastern District of Texas under a diversity of citizenship jurisdictional theory. RTC claimed standing as a

---

[3]The order itself appears to be conditional. In ruling from the bench, the court stated, "[a]ll right. Subject to my ruling on the insufficiency of service of process issue, I will go ahead and rule that the 1997 agreement does not bar the plaintiff from trying to bring in Mr. Miscavige as an individual outside his capacity as an officer of RTC."

third-party beneficiary of the Estate-Flag contract.

On the Estate's motion, the district court dismissed the tortious interference count against Liebreich for failing to state a claim. However, the district court denied the Estate's motion to dismiss RTC's breach of contract claim.[4]

The district court next entertained the parties' dispositive motions.  The district court denied the Estate's motion for summary judgment, finding that it embodied only points of law which had already been addressed and rejected by the district court in passing upon the Estate's motion to dismiss.  The district court also denied RTC's motion for partial summary judgment on the issue of liability, finding that the contract was ambiguous on the question of whether the contract precluded suit against Miscavige in his personal capacity, and consequently material facts were in dispute concerning liability.

RTC moved the district court to reconsider its motion for partial summary judgment. In support of its motion to reconsider, RTC attached extrinsic evidence which purported to demonstrate that the contracting parties intended Miscavige to be protected

---

[4]The Estate moved to dismiss the breach claim for want of jurisdiction (subject matter and personal), for lack of capacity to be sued in Texas, for lack of standing, and for improper venue. The Estate also asked the district court to dismiss the action based on multiple abstention doctrines, a theory of litigation privilege, the doctrine of law of the case, and the Constitutional requirements of the Full Faith and Credit Clause. Finally, in rounding out its rather omnibus motion, the Estate asserted the defenses of waiver and estoppel. The district court rejected each of these theories of dismissal.

from suit in his personal capacity. In light of this evidence, the district court reconsidered its previous ruling and granted summary judgment in favor of RTC on the issue of liability.

The case then proceeded to trial on the issue of damages. The Estate proposed to offer the testimony of Liebreich to dispute the foreseeability of the damages incurred by RTC, under the theory that prior to adding Miscavige - the sole act of breach - Liebreich reasonably relied on the Florida court's order permitting Liebreich to add Miscavige, but the district court determined the evidence to be irrelevant and excluded it. RTC, on the other hand, was permitted by the district court to provide testimony concerning attorneys' fees incurred by RTC in moving to have Miscavige dismissed for want of service of process, and in aiding Miscavige in his quest to recover attorneys' fees from the Florida trial and appellate courts.

At the close of testimony, the Estate moved for a directed verdict asserting that RTC had failed to meet its burden at trial. The district court denied the motion from the bench. The Estate offered a proposed jury instruction regarding the prevailing market rate for attorneys' fees in Tampa, but the district court rejected the instruction. The jury returned a verdict for $258,697.10.

C.   *Post-Trial Motions*

Upon completion of the trial the Estate filed a Rule 59

6

motion for a new trial, asserting, again, that the district court erred in failing to dismiss the action prior to trial and reasserting its previously adjudicated arguments that the district court lacked both personal and subject matter jurisdiction, that venue was improper, that the Estate enjoyed a litigation privilege immunity, that RTC lacked standing, and so forth. The Estate also chose to use its Rule 59 motion for a new trial to  reassert its opposition to the district court's previous evidentiary rulings, jury instruction rulings, and the ruling denying a directed verdict. The district court summarily denied the Rule 59 motion.  The Estate filed a notice of appeal.

RTC, on the other hand, moved to recover its costs and fees as a prevailing party pursuant to the Estate-Flag contract.  RTC petitioned the district court for an award of $549, 015.84 in costs and fees for the litigation of this single-issue breach of contract case. The district court reduced the award to $327, 654.00.

RTC also moved the district court to impose sanctions pursuant to 28 U.S.C. §1927 on the Estate's counsel, citing vexatiously repetitive motions and filings on the part of the Estate.  The Estate responded with its own §1927 motion for sanctions.  The district court declined to sanction RTC's counsel, but the court did impose sanctions against the Estate's counsel for 30% of the attorneys' fees awarded, which totaled $98, 296.00.  The Estate's counsel, Thomas and Kennan Dandar,

(the Dandars) filed a second, separate, appeal of the imposition of §1927 sanctions against them.

Finally, RTC filed a cross-appeal challenging the district court's decision to grant Liebreich's 12(b)(6) motion to dismiss the tortious interference claim. The three appeals have been consolidated and are pending now before this Court.

## II.

This Court reviews de novo the district court's determination regarding personal jurisdiction. *Central Freight Lines Inc. v. APA Transport Corp.*, 322 F.3d 376, 380 (5th Cir. 2003). To determine whether a federal district court sitting in diversity has personal jurisdiction over a nonresident defendant, the district court considers first whether exercising jurisdiction over the defendant comports with due process, and if due process is met, the district court turns to the extraterritorial jurisdictional rules of the state in which it sits to determine whether personal jurisdiction is conferred. *Interfirst Bank Clifton v. Fernandez*, 844 F.2d 279, 282 (5th Cir. 1988); *Schlobohm v. Schapiro*, 784 S.W.2d 355, 356 (Tex.1990). Because the Texas Long Arm Statute is coextensive with the confines of due process, questions of personal jurisdiction in Texas are generally analyzed entirely within the framework of the Constitutional constraints of Due Process. *See Texas Long Arm*

*Statute, Tex.Civ.Prac. & Rem.Code Ann.* § 17.041 (Vernon 2001) *et. seq.; Gessmann v. Stephens*, 51 S.W.3d 329, 335 (Tex.App. 2001); *Fernandez*, 844 F.2d at 282.

However, exercising personal jurisdiction over an estate which is probated in a foreign district presents particular jurisdictional problems. Usually when a court exercises jurisdiction over either a foreign or domestic estate the jurisdiction is *in rem* - that is, the court has jurisdiction over the property itself. Here, however, there is no question that the district court lacked *in rem* jurisdiction over the Estate. Instead, the contention here is that Liebreich, as the personal representative of the Estate, created *in personam* jurisdiction over the Estate. There are two ways in which Liebreich might have brought the Estate into the reach of the district court, and both avenues have been presented to this Court. First, the district court found general jurisdiction over the Estate via Liebreich. Moreover, RTC argues that Liebreich created specific jurisdiction over the Estate. However, neither general nor specific jurisdiction existed over the Estate.

A.    *General Jurisdiction*

The district court correctly found that it had general personal jurisdiction over Liebreich as a resident of Texas.

9

However, the district court impermissibly imputed that general personal jurisdiction to the Estate. The district court stated that, "[t]here can be no doubt that as a resident of the State of Texas, Ms. Liebreich has had sufficient contacts with the state to confer general jurisdiction over her in this matter, both in her individual and representative capacities." Thus, the district court concluded that the general jurisdiction which a Texas court has over a Texas resident applies equally to a foreign estate whose representative lives in Texas. However, the district court is in error on this point.

General jurisdiction exists where a "defendant's contacts with the forum state are substantial and continuous and systematic but unrelated to the instant cause of action." *Central Freight Lines*, 322 F.3d at 381 (internal quotations omitted); *Helicoptieros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408 (1984). The residency of a defendant in the forum state routinely creates such systematic and continuous contact. In the instant case, however, the defendant in question is not a resident of Texas. As a creature of the Florida probate regime, the Estate resides in Florida. Thus, for an estate probated in a foreign jurisdiction to establish the type of continuous and systematic contact necessary for general jurisdiction, the representative of the Estate must have made those contacts in her representative capacity, on behalf of the Estate. It is not

10

sufficient that the personal representative herself lives in Texas.

Here, despite the fact that Liebreich conducted some Estate business from her home in Texas, she did not establish systematic and continuous contact with Texas on behalf of the Estate such that general jurisdiction over the Estate was conferred. RTC argues that on behalf of the Estate Liebreich signed a retainer letter in Texas, received and distributed property from the Estate in Texas, and participated in decisions concerning the Florida litigation while she was in Texas.  However, these sporadic Estate-related activities cannot be described as a part of a systematic and continuous stream of activities tying the Estate to Texas. None of the activities individually constitutes a substantial or meaningful contact with Texas, Texas law, or Texas residents, and certainly considered *in toto* they fail to amount to continuous and systematic contact with Texas such that general jurisdiction is created. *Compare*, *Central Freight Lines*, 322 F.3d 381(finding that general jurisdiction was lacking over corporate defendant, despite the fact that the defendant, "routinely arranges and receives interline shipments to and from Texas and apparently sends sales people to the state on a regular basis to develop business, negotiate contracts, and service national accounts...."); *see also*, *Wilson v. Belin*, 20 F.3d 644, 649-51 (5th Cir. 1994) (finding no general personal jurisdiction

11

over the defendant, despite the fact that defendant engaged in at least one professional legal project a year in Texas over the previous three years). Consequently, the district court erred in concluding that it had general personal jurisdiction over the Estate.

    B.    *Specific Jurisdiction*

Although the district court relied on general personal jurisdiction over the Estate, RTC suggests that the district court also had specific jurisdiction over the Estate. Specific jurisdiction may be found when a foreign defendant "has 'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462,472 (1985)(citing *Keeton v. Hustler Magazine*, *Inc.*, 465 U.S. 770,774 (1984) and *Helicopteros Nacionales*, 466 U.S. at 414)(internal citations omitted)).  A single act may support specific jurisdiction where the act is directed at residents of the forum, and the cause of action relates to the act.  *Burger King Corp.*, 471 U.S. at 476 n.18 (*citing McGee v. International Life Insurance Co.*, 355 U.S. 220 at 223 (1957)).

In the specific jurisdiction rubric, only those acts which

12

relate to the formation of the contract and the subsequent breach are relevant. In support of its argument that specific jurisdiction exists, RTC points to the fact that Liebreich participated in negotiations concerning the Estate-Flag contract while in Texas, and the fact that Liebreich signed the Estate-Flag contract while in Texas. However, neither of these acts were directed at residents of the forum state, or at the forum state itself.  While it is well established that "with respect to interstate contractual obligations...parties who reach out beyond one state and create...obligations with citizens of another state are subject to regulation and sanctions in the other State for the consequences of their activities," here, while contracting in the stead of a Florida resident, Liebreich reached out *from* Texas to residents of Florida (Flag) and California (RTC). *Burger King*, 471 U.S. at 473. Therefore, the Estate did not direct its activities at the forum state.

Moreover, the physical location of Liebreich at the time she signed the agreement and participated in negotiations on behalf of the Estate is not especially relevant in the analysis.[5] The Supreme Court has rejected a formalistic rendering of minimum contacts, opting instead to look at the degree that a nonresident

_____

[5] Additionally, the presence of Liebreich in Texas lacks the significance that it might otherwise have, had she been acting on her own behalf,  as she was at the time representing an entity whose "physical presence" was in Florida.

13

defendant has reached out and availed himself of the foreign venue.  Here, in forming the contract, the Estate availed itself of the State of Florida and contracted exclusively with non-Texas residents. The Estate did not reach out to Texas, nor did it direct its contract-related activities toward Texas. It did not contract with Texas residents nor did it avail itself of Texas law in the formation of the contract.  Therefore, the fact that Liebreich signed the contract in Texas does not, alone, support specific jurisdiction.

In sum, the district court lacked personal jurisdiction over the Estate. Liebreich's general jurisdiction cannot be imputed to the Estate, and the Estate did not establish minimum contacts relating to the breach action with the forum jurisdiction sufficient to support specific jurisdiction. Therefore, the district court erred in failing to dismiss the action against the Estate for want of jurisdiction.

### III.

For the foregoing reasons the judgment of the district court is vacated and the case is remanded for proceedings consistent with the renderings herein.

14