957 A.2d 1128

M'Hamed KORTOBI

v.

Brian L. KASS, Personal Representative of the Estate of James Leach, Jr., et al.

No. 0295, Sept. Term, 2007.

Court of Special Appeals of Maryland.

Oct. 6, 2008.

426

428

_____ .

Robert E. Wilson (Wilson & Parlett, on brief), Upper Marlboro, for Appellant.

Walter E. Gillchrist, Jr. (Andrew T. Rezendes, Budow & Noble, on brief), Bethesda, for Appellee.

Panel: MEREDITH, SHARER,* JAMES S. GETTY, (Retired, Specially Assigned), JJ.

SHARER, J.

In this appeal we are called upon to decide whether jurisdiction lies in Maryland over a non-resident decedent's estate where the only contact with Maryland is the Maryland residence of the personal representative. We shall hold that Maryland does not have jurisdiction for the purpose of a tort action against the decedent. Therefore, we shall affirm the judgment of the Circuit Court for Prince George's County, which granted appellee's motion to dismiss on lack of jurisdiction grounds.

The genesis of this litigation is a personal injury action arising out of an automobile collision that occurred on January 6, 2003, at the intersection of 12th Street, N.W., and K Street, N.W., in Washington, D.C. A vehicle being operated by appellant, M'Hamed Kortobi, was struck by a vehicle driven by Carver James Leach, Jr. Both Kortobi and Leach were residents of the District of Columbia. Kortobi was injured and required medical treatment. Leach died from causes unrelated to the motor vehicle accident before suit was filed.

_____

* Sharer, J. Frederick, J., participated in the hearing and conference of this case while an active member of this Court; he participated in the adoption of this opinion as a retired, specially assigned member of this Court.

Because Leach was a resident of the District of Columbia, and his assets, including real estate, were located in that jurisdiction, an estate was opened in the Probate Division of the Superior Court of the District of Columbia. Brian L. Kass, appellee, was appointed by the probate court as the personal representative of Leach's estate. Kass is an attorney in the firm of Kass, Mitek & Kass, located in Washington, D.C. He is a resident of Maryland. All filings for the Leach Estate were made from Kass's District of Columbia office.[1] No estate business was conducted in Maryland.

As Leach's personal representative, Kass gathered and reported all assets to the Superior Court. Leach's only beneficiaries were Willene C. Leach and Angela Leach, both of whom are residents of the District of Columbia. Leach owned no property in Maryland, or in any jurisdiction other than the District of Columbia.

Initially, Kortobi filed a complaint against the Leach Estate in the Superior Court of the District of Columbia. After the appointment of Kass as the personal representative, Kortobi dismissed the District of Columbia suit, and filed the instant suit in the Circuit Court for Price George's County. On July 15, 2006, Kortobi served Kass, in his capacity as personal representative, at Kass's residence in Howard County, Maryland.

Kass then filed, *inter alia*, a motion to dismiss based on lack of personal jurisdiction. After reviewing the parties' initial submissions, the circuit court ordered the parties to prepare memoranda to address the applicability of Md.Code, Trusts and Estates, § 5-502(a), with particular focus on the following provision:

Any foreign personal representative may exercise in Maryland all powers of his office, and may sue and be sued in

---

1. Before his appointment as personal representative, Kass had neither a business nor a personal relationship with Leach. We were advised by counsel at oral argument that the appointment of Kass was suggested by counsel in order to establish Maryland jurisdiction for the tort action.

Maryland, subject to any statute or rule relating to nonresidents.

Neither party requested an evidentiary hearing, and none was held. The trial court, upon "consideration of all submitted pleadings, the record and applicable case law and statutes," issued a memorandum opinion and order granting Kass's motion to dismiss on the grounds of lack of personal jurisdiction, finding "[t]he only basis for bringing suit in Maryland is that the Estate's Personal Representative is a Maryland resident." [2]

Judgment was entered on April 25, 2007, and Kortobi noted his timely appeal, asking:

Did the trial court err in granting appellee's motion to dismiss for lack of personal jurisdiction over the personal representative of the estate?

## Standard of Review

In our review of a grant of a motion to dismiss for lack of personal jurisdiction, we must determine "whether the trial court was legally correct in its decision to dismiss the action." *Bond v. Messerman*, 391 Md. 706, 718, 895 A.2d 990 (2006) (citing *Beyond Systems, Inc. v. Realtime Gaming Holding Co.*, 388 Md. 1, 12–29, 878 A.2d 567 (2005); *Jason Pharmaceuticals, Inc. v. Jianas Bros. Packaging Co., Inc.*, 94 Md.App. 425, 431–34, 617 A.2d 1125 (1993)).

### *Foreign Personal Representative*

Jurisdiction over a foreign or domestic estate is typically based on *in rem* jurisdiction theories. The State has the right " 'to subject all property within its borders to its laws' " *Livingston v. Naylor*, 173 Md.App. 488, 514, 920 A.2d 34 (2007) (quoting *Belcher v. Gov't Employees Ins. Co.*, 282 Md. 718, 720, 387 A.2d 770 (1978)). The question of whether

---

2. The other defendant in the case, Progressive Casualty Insurance Company, named under a theory of uninsurance or under-insurance, moved for summary judgment, which was granted by the court. Progressive did not participate in this appeal.

there is property within the court's territorial reach that will provide a jurisdictional base "is a simple one since the situs of realty or tangible personalty is not difficult to determine." *Id.* In the case before us, however, there is no question that the circuit court lacked *in rem* jurisdiction over the Estate, and neither party asserts a claim to the contrary.

Instead, Kortobi contends that Kass's Maryland residence gives Maryland *in personam* jurisdiction over the Leach Estate. Kortobi contends that "[i]t cannot be disputed that Brian L. Kass, was the correct Defendant below," because "[t]he estate of a deceased person is not an entity known to the law, and is not a natural or artificial person but is merely a name indicating the sum total of assets and liabilities of a decedent." Therefore, Kortobi maintains, a personal jurisdiction, or minimum contacts, analysis is unnecessary. He asserts:

> Clearly, whether the Estate itself has any contacts with the State of Maryland is irrelevant to the determination of personal jurisdiction over the Personal Representative of the Estate. Clearly, whether the decedent himself had sufficient contacts with the State of Maryland is also irrelevant to the issue before the court.

In sum, Kortobi concludes that Maryland would have jurisdiction over the Estate solely on the fortuitous basis of the residence of the personal representative.[3]

The trial court correctly viewed Kass as a foreign personal representative of the Leach Estate. A foreign personal representative is identified in Md.Code, Estates and Trusts § 5–502(a) and (b):

> (a) Any foreign personal representative may exercise in Maryland all powers of his office, and *may sue and be sued in Maryland, subject to any statute or rule relating to nonresidents.*

---

**3.** Of course, we have noted that Kass's designation as personal representative is not fortuitous. Rather, it was arranged by counsel for the purpose of obtaining Maryland jurisdiction for the tort action.

(b) A foreign personal representative has the same power to sell, mortgage, lease, convey, or otherwise transfer or assign real property or an interest in the property which is located in Maryland as a Maryland personal representative has with respect to real property and an interest in the property.

(Emphasis added).

Our research has disclosed no Maryland authority to answer whether the Maryland residence, absent more, of a foreign personal representative creates personal jurisdiction over the foreign estate. Other jurisdictions have dealt with this issue, and provide helpful guidance, which we shall discuss, *infra.* First, however, we discuss the effect of Trusts and Estates § 5–502.

### *Statutory Interpretation*

In *Tribbitt v. State,* 403 Md. 638, 645–46, 943 A.2d 1260 (2008), the Court of Appeals summarized the fundamental rules of statutory interpretation:

> The cardinal rule of statutory interpretation is to ascertain and effectuate the intent of the Legislature. Statutory construction begins with the plain language of the statute, and ordinary, popular understanding of the English language dictates interpretation of its terminology. *Bowen v. City of Annapolis,* 402 Md. 587, 613, 937 A.2d 242 (2007) (quoting *Kushell v. Dep't of Natural Res.,* 385 Md. 563, 576–78, 870 A.2d 186 (2005)). "When construing a statute, we recognize that it 'should be read so that no word, clause, sentence or phrase is rendered superfluous or nugatory.' " *Collins v. State,* 383 Md. 684, 691, 861 A.2d 727 (2004) (quoting *James v. Butler,* 378 Md. 683, 696, 838 A.2d 1180 (2003)). We will "neither add nor delete language so as to reflect an intent not evidenced in the plain and unambiguous language of the statute...." *Price v. State,* 378 Md. 378, 387, 835 A.2d 1221 (2003).

> If the plain language of the statute is unambiguous, "the inquiry as to legislative intent ends; we do not then need to resort to the various, and sometimes inconsistent, external

rules of construction, for 'the Legislature is presumed to have meant what it said and said what it meant.'" *The Arundel Corp. v. Marie*, 383 Md. 489, 502, 860 A.2d 886, (2004) (quoting *Toler v. Motor Vehicle Admin.*, 373 Md. 214, 220, 817 A.2d 229 (2003)). "If, however, the meaning of the plain language is ambiguous or unclear, we seek to discern legislative intent from surrounding circumstances, such as legislative history, prior case law, and the purposes upon which the statutory framework was based." *Lewis v. State*, 348 Md. 648, 653, 705 A.2d 1128 (1998) (citing *Haupt v. State*, 340 Md. 462, 471, 667 A.2d 179 (1995)).

The language of Estates and Trusts § 5–202(a) appears to create ambiguity in a situation such as that before us, where the "foreign" personal representative is actually a resident of Maryland. Because we find uncertainty in the wording of the statute, we look to the legislative history of Estates and Trusts § 5–202(a). Section 5–502 was formerly Md.Code, Article 93, § 5–202.[4] The comment to Art. 93, § 5–502, (1969 Rep. Vol.) is instructive:

> This Section adopts the basic theory of The Uniform Powers of Foreign Representatives Act. The new statute also re-peals § 87, which gave to District of Columbia personal representatives certain powers given to Maryland personal representatives. *The powers of a District of Columbia or any foreign representative will now be governed by the laws of the jurisdiction in which he was appointed.*

(Emphasis added). (Internal citations omitted).

The comment suggests that a foreign personal representative is vested with the same powers in Maryland that he or she would have had in the jurisdiction in which he or she was appointed. Thus, the question of Kass's personal residence is irrelevant. Therefore, we turn to the laws of the District of Columbia that control the powers and authority of a personal

---

**4.** The recodification came as a result of the recommendation by the Henderson Commission's 1968 report of the "Second Report of the Governor's Commission to Review and Revise the Testamentary Law of Maryland: Article 93."

representative.[5]  The District of Columbia Code § 20–701(c) (2001) provides:

> Except as to proceedings which do not survive the death of the decedent, a personal representative of a decedent domiciled in the District of Columbia at his death *has the same standing to sue and be sued in the courts of this and any other jurisdiction as the decedent had immediately prior to death.*

(Emphasis added).[6]

Under the laws of the District of Columbia, Kass has the same standing "to sue and be sued" as did Leach immediately before his death.  Kass, therefore, steps into the shoes of Leach for purposes of jurisdictional analysis.  The question becomes whether Kortobi could have sued Leach in Maryland as a result of injuries alleged to have been caused in the District of Columbia car accident.  In other words, did Maryland have personal jurisdiction over Leach at that time?

On its face, Md.Code, Estate and Trusts, § 5–502 makes no distinction about the personal residence of a personal representative.  Kass is a foreign personal representative, appointed by the Probate Court of the Superior Court of the District of Columbia, to represent a District of Columbia estate.  As a foreign personal representative, he may "sue or be sued," subject to "any statute or rule relating to nonresidents."  That provision, we are satisfied, includes, *inter alia,*

---

5.  In so doing, we construe "powers" to include laws relating to the ability of the personal representative to sue or be sued in various jurisdictions.

6.  This language is nearly identical to that found in the Uniform Probate Code, §§ 3–703(c).  General Duties; Relation and Liability to Persons Interested In Estate;  Standing to Sue.

   The comment to that section provides:
   Paragraph (c) is designed to reduce or eliminate differences in the amenability to suit of personal representatives appointed under this Code and under traditional assumptions.  Also, the subsection states that so far as the law of the appointing forum is concerned, personal representatives are subject to suit in other jurisdictions.  It, together with various provisions of Article IV, are designed to eliminate many of the present reasons for ancillary administrations.

the Maryland Long Arm Statute, Md.Code, Courts & Jud. Proc., § 6–103 (2006 Rep. Vol.), which we shall discuss below. In other words, as a foreign personal representative, Kass is to be viewed as a non-resident, despite his Maryland residency.

### *Personal Jurisdiction Analysis*

■ Turning to the question of whether Maryland would have personal jurisdiction over Leach, we note the general rule that, in personal actions, "jurisdiction must be acquired over a person in order for a court to impose a personal liability or obligation upon a defendant in favor of a plaintiff." *Allen v. Allen*, 105 Md.App. 359, 367, 659 A.2d 411 (1995) (citing *Altman v. Altman*, 282 Md. 483, 486, 386 A.2d 766 (1978)). Normally, such jurisdiction is obtainable only over persons subject to the territorial jurisdiction of the court. *See Hunt v. Tague*, 205 Md. 369, 109 A.2d 80 (1954).

Judge Adkins, now a member of the Court of Appeals, recently wrote for this Court in *Taylor, et al. v. CSR, Ltd., et al.*, 181 Md.App. 363, 373–74, 956 A.2d 754, 760 (2008):

> The defense of lack of personal jurisdiction ordinarily is collateral to the merits and raises questions of law. *Bond v. Messerman*, 391 Md. 706, 718, 895 A.2d 990 (2006). "The burden of alleging and proving the existence of a factual basis for the exercise of personal jurisdiction, once the issue has been raised, is upon the plaintiffs." *McKown v. Criser's Sales and Serv.*, 48 Md.App. 739, 747, 430 A.2d 91 (1981). Plaintiffs must establish a *prima facie* case for personal jurisdiction to defeat a motion to dismiss. *See Beyond Sys., Inc. v. Realtime Gaming Holding Co.*, 388 Md. 1, 26–29, 878 A.2d 567 (2005). "If facts are necessary in deciding the motion, the court may consider affidavits of other evidence adduced during an evidentiary hearing." *Id.* at 12, 878 A.2d 567. Without an evidentiary hearing, courts are to consider the evidence in the light most favorable to the non-moving party when ruling on a motion to dismiss for lack of

personal jurisdiction. *See Zavian v. Foudy,* 130 Md.App. 689, 702, 747 A.2d 764 (2000).

As in *Taylor,* the court did not conduct an evidentiary hearing, and was required to consider, and did consider, the pleadings and other matters of record, including the arguments of counsel.

Personal jurisdiction over Maryland residents is governed by Md.Code, Courts and Jud. Proc., § 6–102:

**Persons domiciled in, organized under laws of, or maintaining principal place of business in State.**

(a) Basis of personal jurisdiction.—A court may exercise personal jurisdiction as to any cause of action over a person domiciled in, served with process in, organized under the laws of, or who maintains his principal place of business in the State.

(b) Exercise of jurisdiction on other basis.—This section does not limit any other basis of personal jurisdiction of a court in the State.

Since Leach was not domiciled in Maryland, our analysis is guided by Md.Code, Courts and Jud. Proc., § 6–103, otherwise known as the Maryland Long Arm statute. It provides:

**Cause of action arising from conduct in State or tortious injury outside of state.**

(a) If jurisdiction over a person is based solely upon this section, he may be sued only on a cause of action arising from any act enumerated in this section.

(b) A court may exercise personal jurisdiction over a person, who directly or by an agent:

(1) Transacts any business or performs any character of work or service in the State;

(2) Contracts to supply goods, food, services, or manufactured products in the State;

(3) Causes tortious injury in the State by an act or omission in the State;

(4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if he regularly

does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State;

(5) Has an interest in, uses, or possesses real property in the State; or

(6) Contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation, or agreement located, executed, or to be performed within the State at the time the contract is made, unless the parties otherwise provide in writing.

■ Whether a Maryland court may properly exercise personal jurisdiction over an out-of-state defendant is answered by a two-part inquiry. *MaryCLE, LLC v. First Choice Internet, Inc.*, 166 Md.App. 481, 497–98, 890 A.2d 818 (2006) (citing *Beyond Systems, Inc. v. Realtime Gaming Holding Co., supra*, 388 Md. at 14, 878 A.2d 567). " 'First, we consider whether the exercise of jurisdiction is authorized under Maryland's long arm statute ... [S]econd ... [we] determine whether the exercise of jurisdiction comports with due process requirements of the Fourteenth Amendment' of the Federal Constitution." *Id.* (quoting *Beyond Systems, supra*, 388 Md. at 15, 878 A.2d 567); *See Lamprecht v. Piper Aircraft Corp.*, 262 Md. 126, 130, 277 A.2d 272 (1971); *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.*, 334 F.3d 390, 396 (4th Cir.2003); *Christian Sci. Bd. of Dirs. of the First Church of Christ v. Nolan*, 259 F.3d 209, 215 (4th Cir.2001). Maryland courts " 'have consistently held that the purview of the long arm statute is coextensive with the limits of personal jurisdiction set by the due process clause of the Federal Constitution.' " *MaryCLE, supra*, 166 Md.App. at 498, 890 A.2d 818 (quoting *Beyond Systems, supra*, 388 Md. at 15, 878 A.2d 567). As a result, " 'our statutory inquiry merges with our constitutional examination.' " *Id.*

We answer the first prong of the inquiry with ease. It is settled law that the General Assembly, in enacting the long-arm statute, intended " 'to expand the boundaries of permissible in personam jurisdiction to the limits permitted by the

Federal Constitution.' " *Mackey v. Compass Marketing, Inc.,* 391 Md. 117, 140, 892 A.2d 479 (2006) (quoting *Geelhoed v. Jensen,* 277 Md. 220, 224, 352 A.2d 818 (1976)); *see* Md.Code, Courts and Jud. Proc. § 6–101(b) ("It is the intention of the General Assembly to extend the personal jurisdiction ... of the courts of the state ... to the fullest extent permitted by the Constitution and laws of the United States."). Consequently, we interpret the long-arm statute in light of that legislative policy, " 'rendering where possible an interpretation consistent with' " the requirements imposed by the Due Process Clause. *Mackey, supra,* 391 Md. at 141, 892 A.2d 479 (quoting *Geelhoed, supra,* 277 Md. at 224, 352 A.2d 818). In *Mackey* the Court of Appeals stated that while

> [w]e have consistently held that the purview of the long arm statute is coextensive with the limits of personal jurisdiction set by the due process clause of the Federal Constitution ..." [w]e did not ... mean ... that it is now permissible to simply dispense with analysis under the long-arm statute ... Rather, we meant no more than what we said in *Geelhoed* ... that we interpret the long-arm statute to the limits permitted by the Due Process Clause when we can do so consistently with the canons of statutory construction.

*Mackey, supra,* 391 Md. at 141 n. 6, 892 A.2d 479 (quoting *Beyond Systems, supra,* 388 Md. at 15, 878 A.2d 567) (some citations omitted).

■ The second prong of the analysis, the constitutional standard, is composed of two well-established components: 1) that the defendant have minimum contacts with the forum, *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (stating that "due process requires only that in order to subject a defendant to a judgment *in personam,* if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " (citation omitted.)); *Zavian v. Foudy,* 130 Md.App. 689, 694–95, 747 A.2d 764 (2000); and 2) that subjecting the defendant to personal jurisdiction be consistent with "fair play and substan-

tial justice." *See International Shoe, supra,* at 316, 66 S.Ct. 154; *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476–77, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).[7]

There exists no hard and fast procedure for determining whether a defendant has established minimum contacts with a forum; instead, "a court is required to examine the facts of each case." *Presbyterian Univ. Hosp. v. Wilson,* 99 Md.App. 305, 316, 637 A.2d 486 (1994) (citing *Kulko v. California Superior Ct.,* 436 U.S. 84, 92, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978)). One fundamental inquiry is "whether the non-resident defendant engaged in some act or conduct through which the benefits and protection of the law of the forum state were 'purposefully avail [ed].'" *Id.* (quoting *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958)). As a result, minimum contacts may be established in a case when the out-of-state defendant "purposefully direct[s]" his or her activities toward the resident of the forum. *Id. (citing Burger King, supra,* 471 U.S. at 472, 105 S.Ct. 2174) (quoting *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 774, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984)).

Ordinarily, cases involve either "general jurisdiction," where the cause of action is unrelated to the defendant's contact with the forum state, or "specific jurisdiction," where the cause of action arises out of the defendant's contacts with the forum state. *Miserandino v. Resort Properties, Inc.,* 345 Md. 43, 50, 691 A.2d 208 (1997) (citing *Camelback, supra,* 312 Md. at 342, 539 A.2d 1107). As a general rule,

> [W]hen the cause of action does not arise out of, or is not directly related to, the conduct of the defendant within the forum, contacts reflecting continuous or systematic ... con-

---

7. Relevant factors to fairness analysis are: the burden on the defendant; the interests of the forum State; the plaintiff's interest in obtaining relief; the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and the shared interest of the several states in furthering fundamental substantive social policies. *See Asahi Metal Indus., Co. v. Sup.Ct. of California,* 480 U.S. 102, 113, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987); *Camelback Ski Corp. v. Behning,* 312 Md. 330, 342, 539 A.2d 1107 (1988).

duct will be required to sustain jurisdiction. On the other hand, when the cause of action arises out of the contacts that the defendant had with the forum, it may be entirely fair to permit the exercise of jurisdiction as to that claim. *Id.* (citing *Camelback, supra,* at 338–39, 539 A.2d 1107).

■ " 'To exercise either general or specific jurisdiction, the defendant must maintain sufficient minimum contacts with the forum such that the exercise of jurisdiction meets the "general test of essential fairness." ' " *Rep. Prop. Corp. v. Mission West Prop., LLP,* 391 Md. 732, 760, 895 A.2d 1006 (2006) quoting *Presbyterian Univ. Hosp., supra,* 337 Md. at 551–52, 654 A.2d 1324) (citing *Camelback, supra,* 312 Md. at 336, 539 A.2d 1107)).

■ In the case before us, Kortobi relies exclusively on Kass's personal residence in Maryland as the basis for personal jurisdiction. While it is true that Maryland might have jurisdiction over Kass individually, it does not follow that Maryland has personal jurisdiction over a foreign estate of which Kass is the personal representative. It is Leach's status, not Kass's residence, that is the focus of our jurisdictional inquiry.

The record is devoid of any evidence that either Leach, or his estate, established minimum contacts with Maryland, or that they purposefully availed themselves of its laws. We reiterate that Leach was domiciled in the District of Columbia; all of his assets, real and personal, were located in the District of Columbia; the beneficiaries of his estate are residents of the District of Columbia. The motor vehicle accident at the center of this dispute occurred in the District of Columbia. This is clearly and exclusively a District of Columbia matter. There is simply nothing before us that would permit Maryland to exercise jurisdiction over the Leach Estate for the purpose of Korboti's motor tort suit.

### *Other Jurisdictions*

Although we find no Maryland case that has heretofore discussed the precise point before us, we find support in the opinions of courts of our sister states.

*Religious Tech. Center v. Liebreich,* 339 F.3d 369 (5th Cir.2003), a case originating in Texas, is persuasive. Liebreich, a resident of Texas, was named personal representative of a Florida estate. The federal district court ruled that "[t]here can be no doubt that as a resident of the State of Texas, Ms. Liebreich has had sufficient contacts with the state to confer general jurisdiction ... both in her individual and representative capacities." *Id.* at 374. The Fifth Circuit disagreed, holding that "as a creature of the Florida probate regime, the Estate resides in Florida ... the representative of the Estate must have made [continuous and systematic] contacts in her representative capacity, on behalf of the Estate. It is not sufficient that the personal representative herself lives in Texas." *Id.*

In *Giles v. Gageby,* 580 N.W.2d 52, 54 (Minn.App.1998), the Minnesota court stated:

> The general rule at common law was that a personal representative of a decedent's estate could be sued in his or her representative capacity only in the jurisdiction of appointment. *McAndrews v. Krause,* 245 Minn. 85, 71 N.W.2d 153 (1955). The long-arm statute has superseded that rule, however; and *if a foreign personal representative does an act specified by the statute, jurisdiction attaches in Minnesota. V.H. v. Estate of Birnbaum,* 543 N.W.2d 649, 655 (Minn.1996).

(Emphasis added).

■ Our conclusion comports with these decisions that the personal representative of the estate must, in his or her representative capacity, have established sufficient contacts with the forum in order to impute personal jurisdiction to the estate. Thus, we hold that Maryland does not have personal jurisdiction over an estate based solely on the Maryland residence of the personal representative. Kortobi's interpretation of Estates and Trusts § 5–502(a) statute would place no limits on Maryland's jurisdiction. A party wishing to litigate in Maryland against a decedent's estate cannot bypass jurisdictional analysis simply because of the residence of the

personal representative. Kass did nothing on behalf of the estate that would confer Maryland jurisdiction over the tort action.

### Subject matter jurisdiction

■■■■ Finally, we find that Maryland likewise does not have subject matter jurisdiction. Subject matter jurisdiction does not simply mean jurisdiction over a particular case to which the attention of the court is directed. *See Stewart v. State,* 287 Md. 524, 413 A.2d 1337 (1980). Subject matter jurisdiction denotes the power of the court to hear and determine the class of cases to which a case belongs, and over which the authority of the court extends. *See Fooks' Ex'rs v. Ghingher,* 172 Md. 612, 192 A. 782 (1937).

Maryland's choice of law principles, and the principle of *lex loci delecti,* govern this case since the motor accident occurred in the District of Columbia. *See Jones v. Prince George's County, Md.,* 541 F.Supp.2d 761, 763 (D.Md.2008) (citing *Cooper v. Berkshire Life Ins. Co.,* 148 Md.App. 41, 54, 810 A.2d 1045 (2002); *Philip Morris Inc. v. Angeletti,* 358 Md. 689, 744–46, 752 A.2d 200 (2000)).

■■■■ Under the principle of *lex loci delicti,* " 'when an accident occurs in another state[,] substantive rights of the parties, even though they are domiciled in Maryland, are to be determined by the law of the state in which the alleged tort took place.' " *Cooper, supra,* 148 Md.App. at 54, 810 A.2d 1045 (quoting *Angeletti, supra,* 358 Md. at 744–46, 752 A.2d 200); *see also Farwell v. Un,* 902 F.2d 282, 286 (4th Cir.1990) (observing that "Maryland, against what may be the general trend of latter times toward 'significant relationships' analysis, appears rather steadfastly to have adhered to *lex loci* as the ordering principle in tort cases.").

■■■■ The general rule is that " 'the place of the tort is considered to be the place of the injury.' " *Ben–Joseph v. Mt. Airy Auto Transporters, LLC,* 529 F.Supp.2d 604, 608 (D.Md. 2008) (citing *Angeletti,* supra, 358 Md. at 745, 752 A.2d 200); *see also Sacra v. Sacra,* 48 Md.App. 163, 426 A.2d 7 (1981)

(holding that in a wrongful death and survival action where accident occurred in Delaware, but where victims were propelled across state line into Maryland and eventually died, the substantive law of Delaware, and not Maryland, was applicable).

Maryland precedent clearly directs us to look to the substantive law of the place of the collision, i.e., the District of Columbia. The Probate Division of the Superior Court of the District of Columbia " 'has subject matter jurisdiction over the estate of any decedent who was domiciled in the District at the time of death.' " *Dennis v. Edwards,* 831 A.2d 1006, 1011 (D.C.2003) quoting *In re Estate of Delaney,* 819 A.2d 968, 987 (D.C.2003) (citations omitted); *see also In re Estate of Dapolito,* 331 A.2d 327, 328 (D.C.1975).

Subject matter jurisdiction over the Estate of James Carver Leach, and of the alleged tort that gave rise to this litigation, rests in the District of Columbia, not Maryland.

**JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY AFFIRMED;**

**COSTS ASSESSED TO APPELLANT.**