United States Court of Appeals
Fifth Circuit

**F I L E D**

**March 27, 2007**

Charles R. Fulbruge III
Clerk

UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

———————

No. 06-20442
Summary Calendar

———————

MARIE-PAULE RENOIR; PAUL RENOIR; MARIE-PAULE RENOIR TRUST,

Plaintiffs-Appellants,

v.

HANTMAN'S ASSOCIATES, INC., doing business as HANTMAN'S
AUCTIONEERS; PAULA HANTMNAN,

Defendants-Appellees.

———————

Appeal from the United States District Court for the
Southern District of Texas, Houston Division
4:05-CV-4152

———————

Before DAVIS, BARKSDALE, and BENAVIDES, Circuit Judges.

PER CURIAM:[*]


Plaintiffs Marie-Paule Renoir, Paul Renoir, and the Paul

Renoir and Marie-Paule Renoir Revocable Living Trust ("the Trust")

appeal the district court's dismissal for lack of personal

jurisdiction as to the Maryland defendants.  We AFFIRM.

---

[*] Pursuant to 5th Cir. R. 47.5, the Court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5th Cir. R. 47.5.4.

## I. BACKGROUND

In February, 2004, Eckert Fine Art ("Eckert"), a Florida art dealer, contacted a Maryland-based art auction and appraisal company, Hantman's Associates, Inc. d/b/a Hantman's Auctioneers ("Hantman's"), to gauge its interest in handling the sale of the late artist Pierre-Auguste Renoir's personal artifacts collection (the "collection"). Discussions ensued between Eckert and Hantman's, and Paula and Michael Hantman visited Florida to view the collection. In April, 2004, Hantman's mailed a sales proposal and a proposed contract with a Maryland choice-of-law provision to Eckert, which forwarded the materials to the Trust in Texas.

A Renoir family member initiated the first direct contact between Hantman's and the Trust by emailing the auction company in May 2004 to discuss the contract. The Renoirs, the Trust, and Hantman's subsequently negotiated via telephone, mail, and email. On June 15, 2004, the parties executed a contract, under which Hantman's would sell the collection on behalf of the Trust on a consignment basis. The choice-of-law provision's language in the executed contract differed from earlier drafts, however, specifying Texas rather than Maryland law. Both parties deny making the change, and it is unclear when it was made.

After shipping the collection from Florida to Maryland, Hantman's discovered that some collection items were missing. Paula Hantman made a one-day trip to Texas in August, 2004, to

address those inconsistencies, and returned to Maryland with some of the missing items and a watercolor painting that had not been previously listed.

Hantman's offered the collection for sale through auction on May 14, 2005. The Trust did not establish a reserve or minimum price. After the opening price of $150,000 failed to attract a bid, Hantman's marketed the collection to private buyers and received a $135,000 offer. Hantman's communicated the offer to the Trust on June 5, 2005, but the Trust refused, stating that it would not agree to sell the collection for less than $750,000. The buyer insisted that Hantman's had accepted the $135,000 offer and that the sale was final, and filed a lawsuit asserting his right to the collection.

In August, 2005, Hantman's sent the Trust a $100,100 check, reflecting the proceeds of the sale less Hantman's commission. On August 18, 2005, the Renoirs and the Trust sued Hantman's and Paula Hantman in Texas state court. The defendants removed the action to federal court, and the district court dismissed the lawsuit for lack of personal jurisdiction. The plaintiffs appealed. We review a district court's dismissal for lack of personal jurisdiction *de novo*. *Central Freight Lines Inc. v. APA Transport Corp*., 322 F.3d 376, 380 (5th Cir. 2003).

## II. DISCUSSION

The Texas long-arm statute extends personal jurisdiction to the permissible limits of the Due Process Clause, and so we only need to determine whether the exercise of personal jurisdiction in this

case would comport with those federal guarantees. *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999); *Bullion v. Gillespie*, 895 F.2d 213, 216 (5th Cir. 1990). In order for personal jurisdiction to satisfy Due Process requirements, a plaintiff must show that (1) the defendant purposefully availed itself of the benefits and protections of the forum state by establishing "minimum contacts" with the forum state, and (2) the exercise of personal jurisdiction over that defendant does not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *Latshaw*, 167 F.3d at 211.

A single act directed at the forum state can confer personal jurisdiction so long as that act gives rise to the claim asserted, but merely contracting with a resident of the forum state does not establish minimum contacts. *Latshaw,* 167 F.3d at 211; *Hydrokinetics, Inc. v. Alaska Mech., Inc.*, 700 F.2d 1026, 1028 (5th Cir. 1983). We evaluate multiple factors in determining whether a defendant purposefully established minimum contacts within the forum. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479 (1985). Random, fortuitous, or attenuated contacts are not sufficient to establish jurisdiction. *Id.* at 476.

Personal jurisdiction can be of either the general or specific variety. *Mink v. AAAA Develop., LLC*, 190 F.3d 333, 336 (5th Cir. 1999), but the appellants only argue for specific jurisdiction. A court's exercise of specific jurisdiction is appropriate only when

4

the defendants have purposefully directed their activities at residents of the forum, and the litigation results from alleged injuries arising out of or related to those activities. *See Burger King*, 471 U.S. at 472; *Bullion*, 895 F.2d at 216.

The various actions and events the plaintiffs list to demonstrate that Hantman's established minimum contacts with Texas can be grouped in three categories: negotiating and contracting via phone, email, and mail with the Trust and the Renoirs, who were located in Texas; Paula Hantman's visit to Texas in 2004 to address items missing from the collection received in Maryland; and the choice-of-law provision in the contract specifying Texas law. None of these actions or events established the minimum contacts necessary to confer personal jurisdiction.

As previously set forth, merely contracting with a resident of the forum state does not establish minimum contacts. *Latshaw,* 167 F.3d at 211; *Hydrokinetics*, 700 F.2d at 1028. An exchange of communications in the course of developing and carrying out a contract also does not, by itself, constitute the required purposeful availment of the benefits and protections of Texas law. *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 778 (5th Cir. 1986). Otherwise, jurisdiction could be exercised based only on the fortuity that one of the parties happens to reside in the forum state. *Id*. Similarly, Paula Hantman's lone visit to Texas only took place because of discrepancies between the appraisal report and

5

the collection that was shipped from Florida to Maryland.  The visit was no more than a fortuity.

The presence of a choice-of-law provision can be helpful in determining whether there is personal jurisdiction.  *See Jones v. Petty-Ray Geophysical, Geosource, Inc*., 954 F.2d 1061, 1069 (5th Cir. 1992) (stating that forum-selection and choice-of-law provisions "indicate rather forcefully" that defendant "did not purposefully direct its activities towards Texas").  "[A] choice-of-law provision should neither be ignored nor considered sufficient alone to confer jurisdiction."  *Electrosource, Inc. v. Horizon Battery Techs, Ltd.*, 176 F.3d 867, 873 (5th Cir. 1999).

In addition to not being independently determinative, the provision specifying Texas law in the parties' contract is of dubious origin.  Both parties accuse the other of drafting it, and while it is clear from the record that the original drafts of the contract specified Maryland law, and the executed contract specified Texas law, we do not know exactly how or when that change came about.  While a choice-of-law provision can suggest whether a party intended to purposefully avail itself of the benefits and protections of doing business in Texas, it is disputed here whether Hantman's even knew the provision had been changed.  Given this uncertainty, it is difficult to draw any inference that the appellees anticipated local jurisdiction or intended local availment based on the provision.

The appellants also argue that Hantman's made misrepresentations directed to them in Texas through telephone and email communications. As the district court held, however, focusing on where a defendant allegedly directed a tort incorrectly emphasizes the relationship among the *plaintiff*, the forum, and the litigation, rather than among the *defendant*, the forum, and the litigation. Properly considering all factors to evaluate whether Hantman's and Paula Hantman purposefully availed themselves of the benefits and protections of doing business in Texas, the answer is no. The physical location of the Renoirs and the Trust within Texas was irrelevant for Hantman's: the collection was primarily in Florida, and then Maryland. The auction was held in Maryland. Hantman's only contact with Texas came about by the fortuity that a collection in Florida happened to be owned by the appellants in Texas.

Because the appellees never established minimum contacts with the forum state, we need not consider whether the exercise of personal jurisdiction would offend traditional notions of fair play and substantial justice.

For the foregoing reasons, we AFFIRM the district court.