# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-51414

United States Court of Appeals
Fifth Circuit

**FILED**

February 5, 2018

Lyle W. Cayce
Clerk

CHARLES J. TROIS,

>   Plaintiff - Appellant

v.

APPLE TREE AUCTION CENTER, INCORPORATED; SAMUEL
SCHNAIDT,

>   Defendants - Appellees

Appeal from the United States District Court
for the Western District of Texas

Before STEWART, Chief Judge, and JOLLY and OWEN, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

This appeal presents issues of personal jurisdiction and venue. A Texas citizen sued Ohio citizens in a Texas court based on two distinct claims: first, breach of a contract executed and performed in Ohio; and second, fraudulent misrepresentation made during a conference call from Ohio to Texas. The question thus before us is whether the Texas court may properly assert personal jurisdiction over the Ohio defendants in each or either claim, and if so, whether the Texas court is the proper venue. We hold that the breach-of-contract claim cannot be tried in the Texas courts, but the fraud claim, based on misrepresentations, finds a home in Texas.

No. 16-51414

I.

Charles Trois is the owner of a collection of guns, artwork, and other items. He is domiciled in Texas. Samuel Schnaidt is president of Apple Tree, an Ohio auction center, and is domiciled in Ohio.

In spring 2016, Michael Barrick, a Kentucky citizen, contacted Trois about selling some of his collectible items through an Apple Tree auction. Barrick explained that he received a fee for any of his solicitations that resulted in an auction commission for Apple Tree. In this first phone call, Trois expressed interest in dealing with Apple Tree, so Barrick contacted Trois in Texas, by phone, at least twice more. In these calls, Schnaidt was on the line and, according to Trois, knew Trois lived in Texas. It was during these conversations that Schnaidt allegedly misrepresented Apple Tree's marketing tools and the auction arrangements to Trois. Based on these communications, the parties came to a preliminary agreement that Apple Tree would auction Trois's collectible items. Trois then traveled to Ohio, where he and Apple Tree resumed negotiations and entered into a contract for auctions of Trois's collectibles to be held in Ohio. The execution and result of the Apple Tree auctions fell far short of Trois's expectations. Trois sued Schnaidt and Apple Tree (collectively, "the defendants") in Texas state court. The defendants removed the case to Texas federal court. The question is whether the Ohio defendants may be sued in Texas and, if so, whether that court is the proper venue.

II.

Trois's complaint asserts two claims: first, breach of contract and, second, fraud based on misrepresentation. The defendants moved to dismiss

No. 16-51414

the complaint for lack of personal jurisdiction and for improper venue.[1]  Trois alleges that the defendants are subject to specific personal jurisdiction in Texas on the basis of sufficient minimum contacts with Texas and, further, because the claims arose from or related to those contacts.  He also alleges that venue is proper in the Western District of Texas.  The defendants, on the other hand, contend that there has not been sufficient contact with Texas and that this case belongs in Ohio.

Following briefing, the district court dismissed the breach-of-contract claim for lack of personal jurisdiction.  As to the fraud claim, the court found personal jurisdiction but dismissed for improper venue.  Trois timely appealed. We address personal jurisdiction with respect to the breach-of-contract claim and fraud claim, respectively.  We then turn to venue.

## III.

"This Court reviews de novo the district court's determination regarding personal jurisdiction." *Religious Tech. Ctr. v. Liebreich*, 339 F.3d 369, 373 (5th Cir. 2003).  "When, as here, the district court did not conduct an evidentiary hearing on defendant[s'] motion to dismiss, the party seeking to assert jurisdiction is required only to present sufficient facts to make out a *prima facie* case supporting jurisdiction." *Cent. Freight Lines Inc. v. APA Transport Corp.*, 322 F.3d 376, 380 (5th Cir. 2003).  "In resolving this issue, not only the well-pleaded allegations of the complaint may be considered, but also factual showings made by way of depositions [and] affidavits . . . ." *Simon v. United States*, 644 F.2d 490, 497 (5th Cir. 1981).

---

[1] The defendants alternatively moved to transfer venue pursuant to 28 U.S.C. § 1406(A) and 28 U.S.C. § 1404(A).  Because the district court did not rule on that motion, we do not address it here.  *See La. World Exposition v. Fed. Ins. Co.*, 858 F.2d 233, 253 (5th Cir. 1988) ("We are fundamentally a court of review, not of first analysis.").

No. 16-51414

In this diversity case, the exercise of personal jurisdiction over a nonresident defendant must comport with both federal due-process requirements and the long-arm statute of Texas. *Paz v. Brush Engineered Materials, Inc.*, 445 F.3d 809, 812 (5th Cir. 2006). Because Texas's long-arm statute extends to the limits of federal constitutional due process, only one inquiry is required. *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999). Under due-process requirements, the defendant must have requisite minimum contacts with the forum state, and the exercise of jurisdiction in the forum state must not infringe on "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Because Trois argues that the district court has specific personal jurisdiction, he must show the defendants' contacts with Texas "arise from, or are directly related to, the cause of action." *Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994).

A.

We address first the breach-of-contract claim. "Specific jurisdiction may be found when a foreign defendant 'has "purposefully directed" his activities at residents of the forum . . . .'" *Religious Tech. Ctr.*, 339 F.3d at 375 (citations omitted) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)); *see also Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 871 (5th Cir. 2000) ("The focus here is on whether the nonresident 'purposefully availed' itself of the benefits of the forum state."). Because "specific personal jurisdiction is a claim-specific inquiry," *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009), "only those acts which relate to the formation of the contract and the subsequent breach are relevant." *Religious Tech. Ctr.*, 339 F.3d at 375. This includes "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *Burger King Corp.*, 471 U.S. at 479.

4

No. 16-51414

The district court found no personal jurisdiction concerning the contract claim because the auction contract was executed and performed solely in Ohio. We agree.  The only alleged Texas contacts related to contract formation or breach are Schnaidt's conference calls negotiating the agreement while Trois was in Texas.  But, standing alone, that is insufficient purposeful availment to establish jurisdiction over this breach-of-contract claim.  *See McFadin*, 587 F.3d at 760 ("[C]ommunications relating to the performance of a contract themselves are insufficient to establish minimum contacts."); *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 778 (5th Cir. 1986) (holding that "communications [to Texas] in the course of developing and carrying out the contract was in itself . . . insufficient to constitute purposeful availment" where "the contract was centered in Oklahoma").  This claim, centered solely on a contract that the defendants executed and performed in Ohio, is not properly heard in a Texas court.[2]  The district court correctly determined that it does not have personal jurisdiction over the defendants regarding the breach-of-contract claim.

B.

Next we turn to whether the court erred in finding that it has personal jurisdiction over the defendants as to the fraud claim.[3]  The defendants argue

---

[2] Any partial performance by Trois in Texas is insufficient to establish jurisdiction. *See Nerium Int'l, LLC v. Kum Sun*, No. 05-13-00427-CV, 2014 WL 1789882, at *3 (Tex. App. May 2, 2014) ("[E]vidence that [plaintiff] performed its contractual obligations in Texas improperly focuses on its own activities, not [defendants'], and is not sufficient to establish [defendants'] contacts with Texas.").

[3] Because the district court dismissed the fraud claim for improper venue, Trois does not appeal the district court's holding that it has personal jurisdiction, but the defendants "may urge any ground available in support of a judgment." *Cooper Indus., Ltd. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 876 F.3d 119, 126 (5th Cir. 2017) (quoting *Castellano v. Fragozo*, 352 F.3d 939, 960 (5th Cir. 2003) (en banc)).  Moreover, it would have been improper for the defendants to cross-appeal on this point. *See id.* ("A cross-appeal is generally not proper to challenge a subsidiary finding or conclusion when the ultimate judgment is favorable to the party cross-appealing.").

5

it did err because their contacts did not form the necessary connection with Texas. Importantly, the minimum-contacts test for personal jurisdiction in fraud differs from that in contract.[4] "A forum State's exercise of jurisdiction over an out-of-state intentional tortfeasor must be based on intentional conduct by the defendant that creates the necessary contacts with the forum." *Walden v. Fiore*, 134 S. Ct. 1115, 1123 (2014). "The proper focus of the minimum contacts inquiry in intentional-tort cases is the relationship among the defendant, the forum, and the litigation." *Id.* at 1126 (internal quotation marks omitted).

At the outset, we must determine whether Barrick's Texas contacts with Trois may be imputed to the defendants by virtue of an agency relationship between the defendants and Barrick. A defendant may be subject to personal jurisdiction because of the activities of its agent within the forum state, *McFadin*, 587 F.3d at 761, so the question here is whether the parties' finder's-fee arrangement, without more, constitutes a sufficient agency relationship to justify imputing Barrick's Texas contacts to the defendants. The parties apply Texas law,[5] under which the "evidence must establish that the principal has both the right: (1) to assign the agent's task; and (2) to *control* the means and details of the process by which the agent will accomplish that task." *Indian*

---

[4] *See generally* 4A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1069.1 (4th ed.) ("When suit is brought in a federal court on a contractual or other nontort claim, the propriety of the court asserting jurisdiction over a defendant will turn on a number of factors, including whether the contract or breach thereof occurred in the state, the number of contacts the defendant has had with the state, and a balancing of the convenience to the plaintiff of maintaining the suit in the state against the inconvenience to the defendant of defending the action there.").

[5] We need not address whether Texas law does in fact apply because the key inquiry under Texas, Kentucky, and Ohio law is whether the principal exercises "control" over the purported agent. *See In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 753 F.3d 521, 529 (5th Cir. 2014) (explaining there is no conflict of laws where each state law would produce the same decision); *Hendrickson v. Grider*, 70 N.E.3d 604, 620 (Ohio Ct. App. 2016); *Phelps v. Louisville Water Co.*, 104 S.W.3d 46, 50 (Ky. 2003).

*Harbor Ins. Co. v. Valley Forge Ins. Grp.*, 535 F.3d 359, 364 (5th Cir. 2008) (emphasis added).

In *McFadin v. Gerber*, we held that there was no agency relationship sufficient to establish minimum contacts with Texas where a nonresident defendant had a revenue-sharing agreement with an independent sales representative selling goods in Texas. 587 F.3d at 758, 761–62. We reasoned that the defendant did not *direct* the representative to sell the goods in Texas, even though the representative did so. *Id.* at 761. The same holds true here. Barrick and Apple Tree had a finder's-fee arrangement under which Barrick would receive a commission for his successful solicitation of Trois in Texas, but there is no evidence the defendants controlled Barrick's solicitations, let alone directed Barrick to solicit in Texas. Thus, the finder's fee agreement here does not establish an agency relationship between Barrick and the defendants.

Focusing then on the defendants' contacts, Trois contends the defendants created the necessary contacts with Texas when Schnaidt participated in a conference call to Trois (that Barrick initiated) and allegedly misrepresented certain things over the phone. As the district court correctly observed, there is no published specific authority on point.[6] We have permitted the exercise of specific personal jurisdiction over an intentional-tort claim where a nonresident defendant places a call to a forum and makes false statements over the phone to a forum resident. *See, e.g.*, *Brown v. Flowers Indus., Inc.*, 688 F.2d 328, 332, 334 (5th Cir. 1982) (holding one defamatory phone call initiated by defendant sufficient to establish personal jurisdiction); *see also Moncrief Oil Int'l Inc. v. OAO Gazprom*, 481 F.3d 309, 314 (5th Cir. 2007)

---

[6] In *Lewis v. Fresne*, we permitted personal jurisdiction over a nonresident defendant who participated in a telephone conference call that was designed to convince the forum-resident plaintiff to make a loan. 252 F.3d 352, 358 (5th Cir. 2001). Importantly, however, the plaintiff in *Lewis* also alleged that the defendant prepared and sent some documents to Texas, so that case is not controlling. *Id.*

("When a nonresident defendant commits a tort within the state . . . that tortious conduct amounts to sufficient minimum contacts with the state by the defendant to constitutionally permit courts within that state . . . to exercise personal adjudicative jurisdiction . . . ."); *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 213 (5th Cir. 1999) ("When the actual content of communications with a forum gives rise to intentional tort causes of action, this alone constitutes powerful availment."). But in *Wilson v. Belin*, we held that personal jurisdiction in a defamation case could not rest on a nonresident defendant's tortious *response* to one uninitiated, unsolicited phone call. 20 F.3d at 649.

This case falls within the fuzzy boundaries of the middle of the spectrum. Although Schnaidt did not initiate the conference call to Trois in Texas, Schnaidt was not a passive participant on the call. Instead, he was the key negotiating party who made representations regarding his business in a call to Texas. It is that intentional conduct on the part of Schnaidt that led to this litigation. So Schnaidt is not being haled into Texas court "based on [his] 'random, fortuitous, or attenuated' contacts." *Walden*, 134 S. Ct. at 1123 (internal quotation marks omitted). To be sure, we are somewhat wary of drawing a bright line at who may push the buttons on the telephone.

Therefore, we hold that Schnaidt, a willing participant on a conference call who actively engaged in conversation regarding his business, is more akin to an initiator of a phone call as contrasted to the recipient of an uninitiated, unsolicited phone call. The defendants should have reasonably anticipated being haled into Texas court as a result of reaching out to Texas via phone in order to garner business and make specific representations. The defendants have requisite minimum contacts with Texas in regards to the fraud claim.

In an effort to persuade us otherwise, the defendants point to our unpublished opinion in *Renoir v. Hantman's Associates., Inc.*, in which we held

that "focusing on where a defendant allegedly directed a tort incorrectly emphasizes the relationship among the *plaintiff*, the forum, and the litigation, rather than among the *defendant*, the forum, and the litigation." 230 F. App'x 357, 360 (5th Cir. 2007) (emphasis in original). But *Renoir*, a breach-of-contract case, did not cite the intentional-tort precedent discussed above. *Id.* at 358, 360. And in any event, the *Renoir* defendants did not "purposefully avail[] themselves of the benefits and protections of doing business in Texas" because their "only contact with Texas came about by [a] fortuity." *Id.* at 360. The contact in the instant case, however, was not fortuitous. Instead, Schnaidt reached out to Trois in Texas, via conference call, to discuss auctioning items located in Texas. In other words, the defendants reached out to the forum, which led to this litigation, so we have focused on the correct relationship here, *i.e.* the defendants and the forum. *Walden*, 134 S. Ct. at 1126.[7] In sum, federal due-process requirements are met here.[8]

Thus in considering the fraud claim, we conclude that the Texas district court properly asserted personal jurisdiction over the Ohio defendants.[9] As we

---

[7] Although not cited by the defendants, the *Walden* Court rejected the Ninth Circuit's jurisdictional approach, which focused on a defendant's mere "knowledge of [plaintiff's] strong forum connections." 134 S. Ct. at 1124 (internal quotation marks omitted). Basing personal jurisdiction solely on the defendant's knowledge that the effects of the tort would be felt in the forum was improper because the acts were not directed to the forum. *Id.* at 1125. But *Walden* is distinguishable because, unlike that defendant's mere knowledge of plaintiff's forum connections, the defendants here reached out to Texas and allegedly made false statements over the phone to a Texas citizen to induce him to conduct business with them. We focus on conduct, not mere knowledge.

[8] The defendants do not address the second prong of the due-process analysis, "traditional notions of fair play and substantial justice," in their briefing.

[9] Schnaidt's argument that the "fiduciary shield" doctrine bars the district court from exercising jurisdiction over him in his personal capacity, as the president of the defendant Apple Tree, is misplaced. The doctrine is inapplicable in the context of this appeal. *See Gen. Retail Serv., Inc. v. Wireless Toyz Franchise, LLC*, 255 F. App'x 775, 795 (5th Cir. 2007) ("[T]he fiduciary shield doctrine . . . does not prohibit [the defendant] from being held personally liable for his own tortious conduct simply because he is an officer of a corporation."); *Duke Energy Int'l, LLC v. Napoli*, 748 F. Supp. 2d 656, 680 (S.D. Tex. 2010). The fact that the court has personal jurisdiction over him is an issue separate from his

No. 16-51414

have said, the considerations for personal jurisdiction over fraud claims are different from those we apply in a straight contract claim. But that does not end our analysis because, after properly concluding that it has personal jurisdiction over the fraud claim, the district court turned around and dismissed the fraud claim on the basis of improper venue.

## IV.

So we proceed to address the district court's decision on the question of venue for the fraud claim. The Ohio defendants, unsurprisingly, contend that the proper venue for Trois's fraud claim lies in Ohio, not Texas. The district court agreed with the defendants and found that, notwithstanding personal jurisdiction over the fraud claim, Texas was the improper venue. We conclude that the district court erred.

"Venue issues are generally reviewed for abuse of discretion. We effectively review this judgment *de novo*, however, because a district court by definition abuses its discretion when it makes an error of law." *United States v. Clenney*, 434 F.3d 780, 781 (5th Cir. 2005) (internal quotation marks omitted).[10] "[V]iew[ing] all the facts in a light most favorable to the plaintiff," *Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 237 (5th Cir. 2009), "the court is permitted to look at evidence in the record beyond simply those facts alleged in the complaint and its proper attachments." *Id.* at 238.

---

personal liability for the conduct of the corporation, which if relevant, would be more appropriately determined on the merits at a later stage of this litigation.

[10] There is conflicting authority regarding the standard of review for dismissal based on venue in the Fifth Circuit. *Compare Harvey v. Turnbo*, Nos. 94-10180, 94-10439, 35 F.3d 560, at \*2 (5th Cir. Aug. 24, 1994) ("This Court reviews a dismissal for improper venue for abuse of discretion."), *with Tucker v. U.S. Dep't of Army*, No. 94-40633, 42 F.3d 641, at \*1 (5th Cir. Dec. 6, 1994) ("Whether venue lies with a particular court is a question of law, which is reviewable on appeal de novo."). But because a district court abuses its discretion where it "bases its legal analysis on an erroneous understanding of the governing law," *Mims v. Stewart Title Guar. Co.*, 590 F.3d 298, 304 (5th Cir. 2009), we need not address this conflict.

No. 16-51414

The Supreme Court instructs us that, "[w]hen venue is challenged, the court must determine whether the case falls within one of the three categories set out in § 1391(b).[11] If it does, venue is proper; if it does not, venue is improper, and the case must be dismissed or transferred under § 1406(a)." *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, 134 S. Ct. 568, 577 (2013). If Texas is the proper venue for this case, it will fall under the second category: "a judicial district in which a substantial part of the events or omissions giving rise to *the claim* occurred." 28 U.S.C. § 1391(b)(2) (2012) (emphasis added).

The district court concluded that, under this second category, a Texas venue was not a fit because, although the alleged misrepresentations occurred during conference calls placed to Texas, the contract execution and performance took place in Ohio. The court held, therefore, that a substantial part of the events did not take place in Texas. But that analysis does not recognize the distinction between the facts giving rise to the two separate claims pleaded, *i.e.* breach of contract and misrepresentation. With respect to the fraud claim, Trois alleges that Schnaidt "made numerous misrepresentations" and "intentionally concealed facts." Trois's affidavit explains that the majority of those alleged misrepresentations occurred during Schnaidt's calls to Texas. So although a substantial part of the events giving

---

[11] Under 28 U.S.C. § 1391(b)(2),

A civil action may be brought in--

(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

(3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

11

rise to the *breach-of-contract* claim—contract execution and the defendants' performance—took place in Ohio, a substantial part of the events giving rise to the *fraud* claim—the misrepresentations—took place in a business call to Texas. Because the district court looked outside the specific events giving rise to the *fraud* claim, it reached an erroneous conclusion of law.

The district court cited *Siragusa v. Arnold*, a case out of the Northern District of Texas, in support of its conclusion, reasoning that a Texas venue was proper in that case only because the "alleged misrepresentations *and* the negotiation of the alleged contract" occurred in Texas. *Trois v. Apple Tree Auction Ctr., Inc.*, No. 16-CV-746-XR, 2016 WL 6956656, at *4 (W.D. Tex. Nov. 27, 2016) (emphasis in original) (citing *Siragusa v. Arnold*, No. 3:12-CV-04497-M, 2013 WL 5462286, at *3 (N.D. Tex. Sept. 16, 2013)). But we are not persuaded that the location of contract negotiation was dispositive to *Siragusa*'s outcome. Instead, the *Siragusa* court held,

> [C]ommunications to [Texas] can constitute a substantial part of the events giving rise to a plaintiff's claims, if the claims derive directly from those communications. Moreover, where "false communications are the focus of Plaintiff['s] claims of fraudulent representations . . . [t]he direction of fraudulent misrepresentations to Dallas, Texas can establish that the events or omissions giving rise to the cause of action occurred in Dallas, Texas."

2013 WL 5462286, at *3. So although the *Siragusa* court may have noted the location of contract negotiation in arriving at its ultimate conclusion, it held the direction of fraudulent misrepresentations alone can be enough to establish venue for a fraud claim where that claim derives from the communications. Here, the misrepresentations directed at Texas are a substantial part of the events giving rise to the alleged fraud. Accordingly, we hold that the Texas district court is a proper venue for the fraud claim.

No. 16-51414

V.

In sum, the district court did not err in dismissing Trois's breach-of-contract claim.  We also hold that the district court did not err in exercising personal jurisdiction over the defendants with respect to the fraud claim. Finally, we hold that the district court did err in dismissing the fraud claim for improper venue.  Texas jurisdiction, and the Texas courtroom, survive for the fraud claim.  The judgment of the district court is

AFFIRMED in part and REVERSED in part,

and the case is REMANDED.