**Reversed and Rendered and Opinion filed August 23, 2018.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-18-00002-CV

---

## MOMENTUM ENGINEERING, LLC, JAMES C. LARSEN AND FRAN LARSEN, Appellants

### V.

## LEE LAVERNE TABLER, Appellee

---

**On Appeal from the 55th District Court
Harris County, Texas
Trial Court Cause No. 2016-39375**

---

### O P I N I O N

In this appeal from the denial of a special appearance, we are asked to decide whether a foreign limited liability company is subject to general jurisdiction in a Texas court based on the company's history of purchasing supplies from Texas vendors for shipment overseas and on the Texas residency of a member of the company. Because these contacts are insufficient to support general jurisdiction and no evidence supports the imputation of the individual co-defendants' contacts to the

company, we reverse the denial of the special appearance and we render judgment granting the special appearance, dismissing the claims against the company, and severing those claims from the remainder of the case.

## I. BACKGROUND

Appellant Lee Laverne Tabler is the assignee of a $1.5 million promissory note and addendum signed by Dubai limited liability company Momentum Engineering, L.L.C. Alleging that the debt had not been paid, Tabler sued Momentum, its managing director James Larsen, Larsen's wife, and the promissory note's guarantor Yarmouth Holdings, Ltd. As the basis for exercising personal jurisdiction over Momentum, Tabler alleged that the Larsens are Houston residents and that they used Momentum as a sham to perpetrate fraud or that Momentum was the Larsens' alter ego.

Momentum filed a special appearance supported by Larsen's affidavit attesting that Momentum is not a resident of Texas but was organized in Dubai and has its headquarters there. The trial court sustained the special appearance and dismissed the claims against Momentum.

Months later, Tabler amended his pleadings but again asserted claims against Momentum based on the same jurisdictional bases. At the same time, Tabler filed a motion for reconsideration of the special appearance and for sanctions, alleging that Larsen had concealed evidence of Momentum's Texas contacts and had falsely represented that the company is a corporation rather than a limited liability company. The trial court granted the motion, vacated its order sustaining Momentum's special appearance, and instead denied the special appearance.

2

## II. Governing Law

The state long-arm statute "extends Texas courts' personal jurisdiction 'as far as the federal constitutional requirements of due process will permit.'" *M & F Worldwide Corp. v. Pepsi-Cola Metro. Bottling Co.*, 512 S.W.3d 878, 885 (Tex. 2017) (quoting *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002)). Federal due-process requirements are satisfied if (a) the nonresident defendant has "minimum contacts" with the forum state, and (b) the court's exercise of jurisdiction "does not offend 'traditional notions of fair play and substantial justice.'" *Id.* (quoting *Walden v. Fiore*, –U.S.–, 134 S. Ct. 1115, 1121 (2014)).

The principle underlying minimum-contacts analysis is that "[t]he defendant's activities, whether they consist of direct acts within Texas or conduct outside Texas, must justify a conclusion that the defendant could reasonably anticipate being called into a Texas court." *M & F Worldwide*, 512 S.W.3d at 886 (quoting *Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 338 (Tex. 2009)). A defendant has established minimum contacts with the forum state if it has "purposefully avail[ed] itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Id.* (quoting *Moncrief Oil Int'l, Inc. v. OAO Gazprom*, 414 S.W.3d 142, 150 (Tex. 2013)). When determining whether the defendant has purposefully availed itself of the privilege of conducting activities in Texas, three rules are paramount. First, only the defendant's contacts are relevant, not the unilateral activity of someone else. *See id.* (citing *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 785 (Tex. 2005)). Second, the defendant's acts must be purposeful and not random or fortuitous. *See id.* And third, the defendant "must seek some benefit, advantage, or profit by 'availing' itself of the jurisdiction" such that it impliedly consents to suit in the forum state. *Id.* (quoting *Michiana*, 168 S.W.3d at 785).

The minimum contacts sufficient to establish personal jurisdiction vary depending on whether general jurisdiction or specific jurisdiction is alleged. *See Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 658 (Tex. 2010) (pointing out that the burden borne by a defendant who files a special appearance is to "negate all bases of personal jurisdiction alleged by the plaintiff"). Here, only general jurisdiction is at issue. A court may exercise general jurisdiction over a nonresident defendant if the defendant's contacts with the forum state "are so 'continuous and systematic' as to render [it] essentially at home in the forum State." *M & F Worldwide*, 512 S.W.3d at 885 (quoting *Goodyear Dunlop Tires Operations, SA v. Brown*, 564 U.S. 915, 919 (2011)) (alteration in original).

### III. STANDARD OF REVIEW

Whether a court can exercise personal jurisdiction over a nonresident defendant is a question of law, which we review de novo. *Kelly*, 301 S.W.3d at 657. If the trial court must resolve a factual dispute to decide the jurisdictional issue but does not issue findings of fact, then all facts necessary to support the judgment and supported by the evidence are implied. *BMC Software*, 83 S.W.3d at 795. If the appellate record includes the reporter's and clerk's records, then the express or implied findings may be challenged and reviewed for legal and factual sufficiency. *Id.*

In its first issue, Momentum argues that we should review any implied factual findings de novo because there was no evidentiary hearing on its special appearance; however, Momentum identifies no implied jurisdictional factual findings that require review. Momentum admits both to its status as a foreign limited liability company and to the Texas contacts that Tabler alleged in his motion for reconsideration. Although Tabler sought to impute the Larsens' contacts to Momentum with allegations of alter ego, sham to perpetrate a fraud, and evasion of

4

the Larsens' legal obligations, he offered no evidence in support of those allegations; thus, there was no conflicting evidence requiring a factual finding on those issues. The parties disagree about whether Momentum was intentionally deceptive regarding its contacts, but in this interlocutory appeal, we have jurisdiction only to determine whether the trial court erred in denying Momentum's special appearance. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(7) (West Supp. 2017). Regarding that issue, we must determine whether the undisputed jurisdictional facts support the trial court's denial of Momentum's special appearance. Where the jurisdictional facts are undisputed, the existence of personal jurisdiction is a question of law which we review de novo. *Old Republic Nat'l Title Ins. Co. v. Bell*, 549 S.W.3d 550, 558 (Tex. 2018) (citing *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004)). Momentum's first issue therefore presents nothing for our review.

## IV. MOMENTUM'S CONTACTS

Tabler does not dispute that Momentum was organized in Dubai and has its headquarters and principal place of business in Dubai. He instead alleges that two categories of contacts that Momentum had with Texas are sufficient to support the trial court's exercise of general jurisdiction, and he additionally alleged several bases for imputing the Larsens' contacts to the company. First, Tabler contends that Momentum's history of purchasing goods and freight-shipping services from Texas companies, and Larsen's meeting in Houston to find out if a Texas company was interested in selling assets abroad, are so continuous and systematic as to render Momentum "at home" in Texas. Second, Tabler maintains that Momentum is a citizen of Texas because Larsen, a member of the limited liability company, resides in Texas. Third, Tabler alleged that Momentum was the Larsens' alter ego, or was

used a sham to perpetrate a fraud, or was used by the Larsens to evade their legal obligations to him.

## A.  Momentum's Purchases and Negotiations

Momentum purchased parts, supplies, and equipment—including a $6 million oil rig—from various companies in Houston and arranged for another Houston company to ship the material overseas.  Momentum also had a meeting in Houston with a representative of Parker Drilling to find out if Parker was interested in disposing of its assets in the Caspian Sea.  The negotiations for the purchase took place in Switzerland, and were unsuccessful.

These contacts do not support the trial court's ruling.  It is well-established that merely purchasing material from the forum state for use elsewhere is an insufficient basis for finding general personal jurisdiction.  *Goodyear Dunlop Tires*, 564 U.S. at 929 ("*Helicopteros* concluded that 'mere purchases [made in the forum State], even if occurring at regular intervals, are not enough to warrant a State's assertion of [general] jurisdiction over a nonresident corporation in a cause of action not related to those purchase transactions.'" (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 418 (1984)); *Helicopteros Nacionales*, 466 U.S. at 410–11, 418–19 (defendant's purchase of 80% of its helicopter fleet and Texas visits by company personnel to negotiate that contract and for training and technical consultations did not support general jurisdiction).  The meeting in Texas about purchasing assets located in the Caspian Sea does not even rise to the level of a purchase.

We therefore turn to the next basis Tabler alleges for jurisdiction.

6

**B.      Citizenship of a Member of the Limited Liability Company**

Tabler next argues that the trial court has personal jurisdiction over Momentum because Momentum is a limited liability company with a member who resides in Houston.[1]  In support of this position, Tabler relies on *Americold Realty Trust v. Conagra Foods, Inc.*, –U.S.–, 136 S. Ct. 1012, 1015 (2016), in which the Supreme Court of the United States held that, for the purpose of federal diversity jurisdiction, an unincorporated association is a citizen of every place in which a member is a citizen.  Because that principle applies to a limited liability company only when identifying its citizenship for the purpose of diversity jurisdiction in a federal court, the case does not support the trial court's ruling.

The question of whether a federal court has diversity jurisdiction over a given case is a distinct inquiry from whether a court has personal jurisdiction over a defendant.  *See Carruth v. Michot*, No. A-15-CA-189-SS, 2015 WL 6506550, at *6–7 (W.D. Tex. Oct. 26, 2015) (rejecting the argument that a member's citizenship is sufficient to establish personal jurisdiction over a limited liability company).  The requirements of federal diversity jurisdiction flow from Article III of the Constitution.  *See* U.S. CONST. art. III, § 2, cl. 1; *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 701 (1982).  Such restrictions on a federal court's subject-matter jurisdiction are the result of the limited nature of the federal judiciary's powers.  *See Ins. Corp. of Ir.*, 456 U.S. at 702.  The requirements applicable to personal jurisdiction, on the other hand, flow from the Due Process Clause and protect individual liberty interests.  *Id.*  Thus, a federal court can have diversity jurisdiction over a case and yet lack personal jurisdiction over the foreign

---

[1] We presume that the law of the United Arab Emirates regarding limited liability companies is the same as our federal and state law, and thus, a limited liability company organized under the law of Dubai is similar to one organized in Texas.  *See Brown v. Lanier Worldwide, Inc.*, 124 S.W.3d 883, 894 n.20 (Tex. App.—Houston [14th Dist.] 2004, no pet.).

defendant. *Cf. Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 464 (1985) (analyzing personal jurisdiction despite the existence of diversity jurisdiction); *Trois v. Apple Tree Auction Ctr., Inc.*, 882 F.3d 485, 487 (5th Cir. 2018) (federal district court with diversity jurisdiction over the case had personal jurisdiction over only one of plaintiff's two claims).

Tabler's reliance on *Americold* is misplaced because that case concerned only the determination of an unincorporated association's citizenship for the purpose of establishing diversity jurisdiction in a federal court. *See Americold*, 136 S. Ct. at 1016. It is true that certain specific factors may be sufficient both to establish citizenship for diversity-jurisdiction purposes and to establish general personal jurisdiction. For example, for the purpose of diversity jurisdiction, a corporation is a citizen of the place in which it was incorporated and the place in which it has its principal place of business, *see* 26 U.S.C. § 1332(c), and the place of incorporation and principal place of business also are the "paradig[m] . . . bases for general jurisdiction." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (quoting Lea Brilmayer et al., *A General Look at General Jurisdiction*, 66 Tex. L. Rev. 721, 735 (1988) (alteration in original)). But Tabler cites no authority, nor have we found any, holding that a limited liability company is subject to general personal jurisdiction in every State in which a member is a citizen. The rule instead is that limited liability companies are treated as partnerships for the purpose of federal

diversity jurisdiction,[2] but they are treated as corporations for the purpose of general personal jurisdiction.[3]

We conclude that the citizenship of a limited liability company's members is not a factor to be considered, for when evaluating personal jurisdiction, we consider only the defendant's contacts, and a limited liability company is a distinct legal entity from its members. *Sherman v. Boston*, 486 S.W.3d 88, 94 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) (citing *Geis v. Colina Del Rio, L.P.*, 362 S.W.3d 100, 109 (Tex. App.—San Antonio 2011, pet. denied)).

## C.    Sham to Perpetrate a Fraud or Alter Ego

Tabler additionally sought to impute the Larsens' Texas contacts to Momentum by alleging that Momentum was the Larsens' alter ego and that they used Momentum as a sham to perpetrate a fraud. Tabler similarly asserted that the Larsens used Momentum as a means to evade their legal obligations to him.

These claims fall within an exception to the general rule that the party contesting jurisdiction bears the burden to negate the jurisdictional allegations against it. *See BMC Software*, 83 S.W.3d at 798. Because the law presumes that a limited liability company is a distinct legal entity, a party wishing to impute another's jurisdictional contacts to the company bears the burden to prove the alleged bases for doing so. *See ACS Partners, LLC v. Gross*, No. 01-11-00245-CV,

---

[2] *See, e.g.*, *Lompe v. Sunridge Partners, LLC*, 818 F.3d 1041, 1046–47 (10th Cir. 2016); *Lincoln Benefit Life Co. v. AEI Life, LLC*, 800 F.3d 99, 104–05 (3d Cir. 2015); *White Pearl Inversiones S.A. (Uru.) v. Cemusa, Inc.*, 647 F.3d 684, 686 (7th Cir. 2011); *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1080 (5th Cir. 2008); *Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006); *Rolling Greens MHP, L.P. v. Comcast SCH Holdings L.L.C.*, 374 F.3d 1020, 1022 (11th Cir. 2004); *Handelsman v. Bedford Vill. Assocs. Ltd. P'ship*, 213 F.3d 48, 51–52 (2d Cir. 2000).

[3] *See Daimler AG*, 571 U.S. at 139, 134 S. Ct. at 138 (evaluating general jurisdiction by determining, for both a corporation and a limited liability company, whether the business was "incorporated" in the forum state or had its principal place of business there).

2012 WL 1655547, at *3 (Tex. App.—Houston [1st Dist.] May 4, 2012, no pet.) (mem. op.).

As a factual basis for disregarding the company's separate nature, Tabler alleged that the Larsens siphoned off corporate assets to avoid corporate debt, then formed new entities to conduct the same business. He claimed that the company's property and the Larsens' individual property were not kept separate; that the Larsens exercised financial control over Momentum; that they commingled funds; that they diverted company profits for their personal use; that they represented they would provide financial backing to the company; that the company was inadequately capitalized; and that the money Momentum borrowed was used to pay the Larsens' personal debts.

Tabler produced no evidence in support of any of these allegations. Because he failed to meet his burden regarding his claims of alter ego, sham to perpetrate a fraud, and evasion of the Larsens' legal obligations, the Larsens' Texas contacts cannot be imputed to Momentum.

We conclude that Momentum's contacts are insufficient as a matter of law to support the exercise of general personal jurisdiction. We sustain Momentum's second issue.

## V. CONCLUSION

A foreign limited liability company is not subject to general jurisdiction in a Texas court based on (a) the company's history of purchasing equipment and supplies from Texas vendors, having a Texas company ship the materials overseas, and having a meeting in Texas about purchasing assets abroad; or (b) the Texas citizenship of a member. Because Momentum's contacts are insufficient to support personal jurisdiction, and no evidence supports the imputation of the Larsens' Texas

10

contacts to the company, we need not consider whether the exercise of personal jurisdiction would comport with traditional notions of fair play and substantial justice. We reverse the trial court's denial of Momentum's special appearance, and we render judgment dismissing Tabler's claims against Momentum and ordering those claims severed from the remainder of the case.


/s/    Tracy Christopher
Justice


Panel consists of Justices Boyce, Christopher, and Busby.